Bellas *against* Levan.

A survey certified by a deputy surveyor to have been made and returned into the office in pursuance of a warrant directed to him, cannot be impeached after a lapse of thirty years by parol evidence tending to show that it was not actually made and marked upon the ground, but that it was a chamber survey.

ERROR to the common pleas of *Northumberland* county.

This was an action of ejectment for three hundred and twenty-nine acres of land, by William Levan against Hugh Bellas and Jacob Weiss. The plaintiff gave in evidence a warrant in the name of Benjamin F. Young, dated the 18th of November 1793, for four hundred acres of land " adjoining land surveyed in the name of William Gray, Jeremiah Jackson, Thomas Grant, William Shartel and others; and a survey dated the 25th of October 1794, by William Gray, deputy surveyor, of four hundred and seventy-nine and a quarter acres adjoining Thomas Grant, Thomas Hamilton, Jeremiah Jackson, John Cowden, John N. Bailey, William Wilson and William Shartel, which was returned in March 1795.

The only important question in the cause, and which was decided by this court, arose out of an offer by the defendant to prove " that the return of survey for B. F. Young, in March 1795, was a fraud upon the land office: that it has no such adjoiners as it calls for: that the survey was never made upon the ground, and would include between eight hundred and fifty and nine hundred acres: and to prove this by facts and circumstances entirely inconsistent with the idea that the survey was made upon the ground. And this evidence

was offered for the purpose of showing that the plaintiff has no title to the land in dispute, and that the same was vacant when applied for and surveyed by the defendants, and those under whom they claim." The plaintiff objected to this evidence, and the court sustained the objection and rejected the evidence, "so far as it tended to show that no survey was made upon the ground." The defendant excepted.

*Bellas* and *Merrill*, for plaintiffs in error.
*Greenough*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—A number of errors have been assigned; and although very elaborately argued on the part of the plaintiff in error, we are of opinion that no one of them has been sustained. The only question presented by them of any importance, and which requires particular notice is, whether a survey of land, certified to have been made and returned by a deputy surveyor into the surveyor-general's office, in pursuance of a warrant directed to him and put into his hands for execution, can be impeached after a lapse of thirty-three years from its return, by permitting parol evidence to be given, tending to show, that it was not made by his going on the ground and running and marking the lines as directed by law, but made by him in his chamber by protraction on paper.

It must strike the mind of every one, upon a moment's reflection, that there must be a time when all the traces and marks of an original survey having been actually made on the ground, as well as all recollection in regard to its having been so made, will have disappeared and gone. And if the lapse of a certain period of time, and the quiescence on the part of every one during the continuance thereof, are not to supply all that may be wanting, in this respect, to establish the validity of the survey, every man's title to his land will be growing worse daily, instead of better; and the consequence will be, that unless he take and continue the actual possession of it to the utmost extent of his boundaries on every direction, he will be in danger of losing it by its being granted and sold again by the commonwealth to a stranger. It is not intended to be even insinuated that the state would do this knowingly; but we know that the state or its officers may be deceived, or misled by the misrepresentation of those who, being over anxious to acquire property, or from some other motive, may have deceived themselves as to the fact of the land having been previously surveyed and appropriated under a prior grant from the state. A sense of justice, therefore, if nothing else, would seem not only to require that such attempts should be discountenanced, but that every owner of land should be made perfectly secure in the enjoyment of his rights. But this is not all: the happiness and prosperity of the community, depending in a great measure upon its peace and quiet, forms an additional reason why those salutary

principles, so well adapted to promote this great end, and to be found both in the common and statute law, should be applied to such cases. The statute of limitations was passed, in part, to protect men in the enjoyment of lands which they had held and possessed as their own for the space of twenty-one years, and to prevent their being evicted under titles or claims that had been permitted to lie dormant during that period—which had previously thereto been the case, and given rise to many and serious disputes. It seems to have proceeded partly from a sense of justice and partly from principles of policy ; for after a lapse of years, the evidence necessary to present the matter giving rise to the controversy in many cases in its true light, was either lost, or destroyed, or had ceased to exist, and therefore it was deemed just, as well as expedient, to put an end to all litigation about the title to the land after it had been held and occupied adversely for twenty-one years. The principle of the statute of limitation existed in the common law so as to prevent dormant claims from being enforced, which had not been enjoyed or acknowledged within the memory of man ; but the statute gave to it a much more effective operation, so as to make a definite and much shorter period an absolute bar to a recovery on rights accruing beyond, and not enjoyed within the time thereby limited. Under the operation of this statute, when the state has once been paid for land, and has parted with her right to it, twenty-one years adverse possession of it afterwards, even by an intruder, will give him a right to hold it against him to whom it was granted for a valuable consideration paid. And it will avail such grantee nothing to show that the party, thus in possession of the land, obtained it tortiously without even the colour or shadow of title, and without paying any thing for it. So much do the prosperity and happiness of a community depend upon its peace and quiet, that every civilized and enlightened nation has deemed it necessary to have a law, limiting the time within which dormant or neglected rights shall be asserted, and exceptions taken to the defective rights of those in the actual possession or enjoyment of property. *Interest reipublicæ ut sit finis litium*, is the maxim of our law on this subject. It is too obvious not to be both seen and felt by every one, how very important it is to the best interests of the state, that titles to lands, instead of being weakened and impaired by the lapse of time, should be held to be strengthened until they shall become incontrovertibly confirmed by it. The holder of land, who has perfect confidence in the goodness of his title to it, is excited to industry in improving it and keeping it in the best state of repair; but if he be distrustful of it, the very reverse will be the case : all exertions of the kind will be relaxed, and even his capacity for labour and business will, in all probability, become impaired from a want of sufficient inducement to exercise it. It is surely the interest of the state to guard against this as much as possible. In England the courts of law, in order to maintain uniformity of decision on the subject of neglected rights generally, have adopted the same period, in imitation

[Bellas v. Levan.]

of their statute of limitations, 21 *Jac.* 1, *c.* 16, as a convenient measure for determining the validity of the rights not falling within it. And hence it has been held that the unmolested enjoyment of an easement for twenty years will, *prima facie*, establish a right of ownership. See *Sergeant Williams's note* (2) to Yard *v.* Ford, 2 *Saund.* 275, and the cases there cited by him. So livery of seisin, when necessary to the perfecting of a lease or conveyance, will be presumed after twenty years, although the usual indorsement attending the fact be wanting. Biden *v.* Loveday, 1 *Vern.* 196 ; Throckmorton *v.* Tracy, *Plowd.* 149, *2d Exception* ; 1 *Roll. Rep.* 132, *pl.* 9 ; 12 *Vin. Abr., pl.* 5 ; Rees *v.* Lloyd, *Wight.* 123. And the same length of forbearance, without demand made, has been held sufficient to extinguish rights to pecuniary claims. Searle *v.* Lord Barrington, 2 *Stran.* 826, S. C., 2 *Lord Raym.* 1370 ; Turner *v.* Crisp, 2 *Stran.* 827 ; Moreland *v.* Bennett, 1 *Stran.* 652 ; Oswald *v.* Leigh, 1 *Term Rep.* 270. And having derived our principles of jurisprudence mainly from England, we have followed their decisions in this respect as to both real and personal interests, so far as they do not come within our own statute of limitations. In Penrose *v.* King, 1 *Yeates* 344, it is laid down that the courts in Pennsylvania have adopted the English rule, that after a certain length of time a debt on a bond will be presumed to have been paid, unless the delay can be accounted for. And accordingly it was ruled in Gouldhawk *v.* Duane, 2 *Wash. C. C. Rep.* 323 ; Henderson *v.* Lewis, 9 *Serg. & Rawle* 379, and in several other cases decided since these, that a lapse of twenty years created a presumption of payment, unless repelled by circumstances, such as the payment of interest within that time, the admission of the obligor that the debt was still due, or proof of his utter inability to pay, and the like. And in Miller *v.* Beates, 3 *Serg. & Rawle* 490, it was said there is no distinction, as regards the presumption, between the cases which affect *real* and *personal* property. In several cases, however, Strickler *v.* Todd, 10 *Serg. & Rawle* 63 ; Kingston *v.* Lesley, 10 *Serg. & Rawle* 390, 391 ; Read *v.* Goodyear, 17 *Serg. & Rawle* 350, and M'Calmont *v.* Whitaker, 3 *Rawle* 84, twenty-one years, the time mentioned in our own statute of limitations in regard to lands, seems rather to have presented itself to the minds of the judges in speaking of this subject, as being the proper period, after which the presumption would arise, in cases connected with real estate and not provided for by the statute. But in Caul *v.* Spring, 2 *Watts* 390, the last case decided on this subject, and embracing, as I conceive, the very question presented here, twenty years from the return of the survey by the deputy into the surveyor-general's office, were held to be sufficient to raise an absolute and conclusive presumption that the survey was rightly made ; which was in conformity to what was said in Miller *v.* Beates, as to the length of time. Doubtless twenty years is sufficiently long, in either case ; and by avoiding a distinction, the rule is rendered more simple. In Caul *v.* Spring the plaintiff claimed under a warrant dated in April 1793,

and a survey certified to have been made in pursuance thereof, and returned by the deputy surveyor into the surveyor-general's office, on the last of April 1794. The land had been taxed as unseated from 1803 till 1824, when it was sold for taxes. The *defendant* claimed under a warrant taken out on the 19th of October 1814, a little more than twenty years after the return of the plaintiff's survey. The land lay in Northumberland county. The survey of the plaintiff consisted of several courses and distances, and was proved by the artist whom Joseph J. Wallace, the deputy surveyor of the district, employed to make the draft thereof that was returned, to have been made by him in Philadelphia in March or April 1794, without his having ever been on the ground ; partly from drafts of surveys made previously of adjoining lands, with which he was furnished by the deputy surveyor. From these he adopted three lines of the survey, and made the residue by protraction. After thus making the draft or plot of the survey, he wrote thereunder a certificate in the usual form, of the survey having been made by the deputy surveyor, which the latter signed. Now although it was unnecessary to run the old lines *adopted from the former surveys,* and to remake them, this having been previously done under proper authority, yet a strict compliance with the law on the subject required that the other lines of the survey should have been run and marked, because it is clear that the old lines of themselves did and could not constitute or form the survey ; and that without the new lines being run and marked on the ground, which was not done, it was not such a survey as the law required. But it having been certified and returned into the proper office by the officer appointed by the state for that purpose, to have been duly made ; and no exception having been taken to it by any one for upwards of twenty years; this court was of opinion that the return of the surveyor ought to be considered absolutely conclusive that the survey was rightly made : otherwise great uncertainty would exist in regard to the titles of lands, which ought, as well on account of the interest and prosperity of the state, as of the owners thereof, to be made as certain, and the latter as secure in the enjoyment of them, as possible. If marks, either natural or artificial, called for by the return of the survey, can be found sufficient to determine with certainty its locality, it is all that ought to be required after a lapse of twenty years' acquiescence by all the world in the claim of the warrantee, his heirs or assigns, to the land.

In most of the cases before referred to, the presumptions which arise from lapse of time are but *prima facie* evidence of the fact, and liable to be rebutted by proof to the contrary. And beyond this, it is certainly very proper that they should not be extended, when it would produce either great inconvenience or injustice. Where, however, it is manifest that by making the presumption absolute and conclusive, corresponding as it were with the *presumptio juris de jure* of the Roman law, no inconvenience or injustice whatever can possibly arise or accrue to any one ; but, on the contrary, the interests of

[Bellas v. Levan.]

the community will be thereby greatly promoted, and at the same time, great inconvenience as well as injustice prevented; it would seem to be the imperious duty of courts to hold it to be so after a lapse of twenty years. The case of Caul *v.* Spring was certainly one of this description; and so is the present case. The owner of the warrant having paid the state for the land mentioned in it, she directed her agent, the deputy surveyor, to locate the land by a survey, which he afterwards certified to have been done by him in due form. The survey so returned was accepted and approved by the surveyor-general on behalf of the state; so that it is difficult, if not impossible, to conceive how the state, upon principles of equity and natural justice, could afterwards have any just right or claim to the land. And if an individual, knowing the circumstances, as he must be presumed to do, will pay his money to the state for it again, how is it possible that he can claim to be placed in a better situation than the state herself; or to acquire a right thereby, which she had it not in her power fairly to give? According to every principle of common honesty and fair dealing between man and man, the first warrantee was entitled to have the land he paid for, at least; and this, it seems, was all he got by the charge of the court and the verdict of the jury in the present case, though more was included within the calls of the survey as returned. Upon the most scrupulous and rigid principles then of exact justice, I do not see how there can be any solid objection to the warrantee's holding this much at least of the land. And as regards the surplus of the land returned within the survey of the plaintiff below, it may be observed that it has been found to be the case pretty generally, upon a close and accurate admeasurement of the original surveys made and returned by the deputy surveyors throughout the state, that they contain more than the quantity reported in the returns. These errors or mistakes, without other circumstances, have never been considered as evidence of fraud; and have seldom, if ever, been corrected. Nor could the state, perhaps, with much seeming propriety, insist upon their being set right; because, where her deputies have committed errors against the warrantees, which has happened in some instances, and they have got less land than they paid for, she has not been in the practice of correcting such mistakes, by refunding to the warrantees the surplus money; so that unless the state were to reciprocate in this matter by refunding the surplus money when the mistake is in her favour, she could not, with a very good grace, claim to have it rectified when against her. But to allow it upon any principle after a lapse of twenty years' acquiescence, would be attended with serious injury and inconvenience, and therefore ought not to be sanctioned. To permit any one, at pleasure, to interfere at so late a period, under pretence of correcting a mistake, or even of detecting a fraud alleged to have been committed in this way upon the state, would necessarily tend to disturb the peace of society by introducing a scene of litigation and strife, attended by a train of evils greatly more than sufficient to counterba-

[Bellas v. Levan.]

lance all the benefits that the state could possibly derive from it. It may be, that by refusing to sanction the interference of individuals in this way, under such pretences, they may be prevented from making profitable speculations at the expense of their innocent and unsuspecting neighbours who rest in perfect security on the goodness of their titles; but still it is believed that the community will suffer no inconvenience or loss by it.

Suppose, for instance, a survey returned as containing three hundred acres, when, in fact, it contains four hundred; and the patentee of it divides it into ten or more parcels, and sells them to as many different purchasers : how, let me ask, could the state undertake to correct the error, by selling and granting the *extra* hundred acres in such case, without doing injustice to the purchasers of the patentee ? I apprehend it would be very difficult, if not altogether impracticable, to effect it in any way, without injury to them; but to permit any one at his pleasure to take out a warrant for the surplus, and to lay it off from the residue in such form and manner as might suit his wishes, is not admissible, perhaps under any circumstances that could probably happen.

The survey under which the defendant in error claims, was certified and returned by the deputy surveyor into the surveyor-general's office in October 1794, calling for marks and boundaries, some of which are still visible on the ground, and describing the land by courses and distances in such manner, that there does not appear to be any serious difficulty in ascertaining its true location. After this it was assessed as unseated land, and as the property of those claiming it under the warrant in the name of Benjamin F. Young, and the survey returned thereon from 1803 to 1829. During this interim it was sold twice for the taxes assessed upon it ; and redeemed in 1829, by the then owners of the Benjamin F. Young warrant. So that the defendant in error and those under whom he claims, have held the land in dispute for thirty-three years : during which period it was assessed as their land, under their title, in the name of Benjamin F. Young, and the survey returned thereon, without any exception being made to the survey by the state or any of its citizens ; but, on the contrary, all acquiescing in and regarding it as a good and valid survey, and the claimants of the land under it and the warrant, as the true owners thereof. To permit the validity of the survey to be called in question after such a lapse of time, under such circumstances, would not only be the height of injustice, but would be holding out a temptation to the removal of landmarks, and the practice of fraud by such means, too strong, perhaps, to be resisted by every one. The reasons which induced the passage of the statute of limitations, making twenty-one years' adverse possession of land by a mere trespasser, an absolute protection to him, and a bar against the claim of the rightful owner, were not half as powerful and cogent, as those which exist in favour of the rule that after twenty years from the time that a survey of land has been

certified and returned by the deputy surveyor into the surveyor-general's office, without objection being made to it during that period, the presumption that it was rightly made shall become absolute and conclusive. We feel perfectly satisfied, therefore, that every principle of natural justice, as well as of sound policy and expediency, is in favour of maintaining the rule, and requires that it should be strictly adhered to.

Judgment affirmed.