## ¡ Stephens *against* Cowan.

If a judgment be rendered by mistake for the plaintiff, upon a case stated for the opinion of the court, it is competent, before writ of error issues, for the court to correct the mistake by entering judgment for the defendant.

A warrant for land "in the county of Northumberland or Huntingdon," executed by the deputy of Westmoreland, upon land in his county, and a patent granted to the warrantee, vests in him a good title.

ERROR to the common pleas of ‾Indiana county.

Thomas Stephens against Samuel Cowan and James C. Fisher. Ejectment for a tract of land, in which the jury found the following special verdict.

In 1827, John Hamilton entered on the lands in dispute, built a house, and cleared about fourteen acres, which he has kept in possession by his .own residence with his family, or by his tenants ever since. By virtue of his improvement, he claimed and occupied the whole of the lands embraced in the survey hereafter mentioned. The‾ lines around the tract were marked on the ground, when Hamilton entered on the land. He deadened timber, and cleared some ground on the fifty acres now in.dispute, and which lies about sixty rods from his house. Being in possession, he sold fifty acres of the tract to Thomas Stephens, the plaintiff, on the 3d of December 1831, as per writing herewith shown, and which is made‾a part of this case, under which the plaintiff went into possession, and had done considerable work, by grubbing, chopping, picking brush, &c. Hamilton paid the taxes for the whole tract, until he sold the fifty acres to Stephens. .In 1834, Cowan had about five acres cleared within his improvement.

Samuel Cowan, one of the defendants, entered on the land on or about the 1st of. April 1834, and whilst he was erecting his house, and standing on the building, the plaintiff went to him and gave him notice in writing of his claim, of which a copy is hereto annexed, and made part of this case. The cabin or house built by Cowan, the defendant, is at the·place and on the ground where Stephens made his clearing.

The defendants resist the plaintiff's claim by virtue of a warrant of the 3d of May 1793, to "John Hendrick for four hundred acres, adjoining land granted the same day to John Long, and in the county of Northumberland or Huntingdon," directed to the surveyor general.

A survey of this warrant was made on the 28th of November 1794, by James Ross, a deputy surveyor for Westmoreland county, containing four hundred and sixty-two acres and forty-three

[Stephens v. Cowan.]

perches, embracing the whole tract on which Hamilton settled, which was returned into the surveyor general's office, on the 9th of June 1795.

On the 3d of October 1800, a patent for the said land was granted to James C. Fisher, who in this case is made co-defendant, for the land so surveyed.

The land in question was in Westmoreland county, and never was within the limits of Huntingdon or Northumberland counties, and is eight or ten miles from the lines of either of said counties.

If the said warrant, survey and patent, vest the title to the said lands, in James C. Fisher, then judgment is to be rendered for the defendants, otherwise for the plaintiff, with six cents damages and costs.

This special case was filed of record, on the 2d of October 1835, and on the same day, judgment was rendered for the plaintiff on the case stated.

The court rose on the 3d day of October 1835.

A paper, of which the following is a copy, was afterwards filed of record.

Ebensburgh, October 7th 1835.—Dear Sir:—In entering judgment on the case, stated by Messrs Alexander & Stanard, I have supposed the patentee, D. Fisher, was the plaintiff. This error you will set right by entering the judgment for defendants.

Your friend,          JOHN YOUNG.

Richard B. M'Cabe, Prothonotary, Indiana.

The entries on the docket so far as material to the present matter are—on the continuance docket.

On the 1st of October 1835, special case stated, judgment for plaintiff thereon. By a note from the president of the court, placed on file this judgment for defendants. On the 31st of December 1835, on motion of Mr Stanard, rule on the plaintiff to show cause why the judgment for plaintiff in this cause should not be stricken out, and judgment entered for defendant; same day on hearing counsel, rule made absolute, and judgment directed to be entered for defendants.

Errors assigned.

1st. That the president of the court after its adjournment, and without consultation with the other judges of the court, had no authority to direct the judgment of the court to be altered, and a different one to be entered.

2d. That the rule to show cause why the judgment should not be stricken out, was illegal and erroneous.

3d. That the judgment ought, on the law and the merits, to have been for the plaintiff, because the survey and patent were illegal, and gave no title to the land in question claimed by defendants.

*Alexander*, for plaintiff in error, upon the first and second errors

[Stephens v. Cowan.]

assigned, cited 2 *Watts* 379. On the 3d error, *sect. 15 of the Act of* 1785, *Stroud. Purd.* 614; *sect. 6 of the Act of* 1792, *Ibid.* 690; 2 *Watts* 288.

*Stanard,* contra, cited 1 *Peters's C. C.* 91; 3 *Binn.* 26; 2 *Yeates* 148.

The opinion of the Court was delivered by

KENNEDY, J.—It is doubtless true, that after the end of the term in which the court has rendered judgment upon a case stated on a special or general verdict, from which an appeal may be taken by writ of error, or otherwise, it cannot alter or change it, with a view to correct what the court upon further reflection may consider an error therein. But it would be going too far, to say, that such court may not afterwards, before any proceeding has been had upon the judgment, correct a mere mistake that has arisen in entering it differently from what was intended, and perhaps, directed. Whenever there is something to correct the mistake by, as for instance, the notes of the presiding judge, no danger need be apprehended from doing so: and the general rule on this subject, as well as the reason of the thing, would seem to justify it. Here, it would seem, that the design of the court was, to enter judgment for the patentee, believing him, at the moment, to be the plaintiff, when in fact, he was the defendant, and under this misapprehension entered the judgment for the plaintiff. But the presiding judge, on his way, returning home from the court, after the end of the term, discovered his mistake in having directed the judgment to be entered for the plaintiff, instead of the defendant, and thereupon, by a note to the clerk of the court, directed it to be corrected, which was accordingly done.

But admitting this to have been wrong, still it cannot avail the plaintiff in error, if the defendant below was entitled to have the judgment of the court rendered in his favour upon the case as stated; for it is the duty of this court, when they reverse the judgment of the court below, given either upon a case stated, or a special, or general verdict that is good, upon a writ of error taken out, by either the plaintiff or the defendant below, to give such judgment as the court below ought to have given. Gildart *v.* Gladston, 12 *East* 668; Slocumb's Case, *Cro. Car.* 442; Butcher *v.* Porter, *Cro. Jac.* 400–1; S. C. *Carthew* 242; Anonymous, 1 *Salk.* 401; S. C. 7 *Mod.* 2, 3; Bret *v.* Bagill, *Comb.* 398; 9 *Vin. Abr.* 579, *tit. Error, pl.* 1, *p.* 580, *pl.* 8; 2 *Tidd's Prac.* 1237–8; Commonwealth *v.* Ellis, 11 *Mass.* 466. These authorities go to show clearly, that whether the writ of error be sued out by the plaintiff or the defendant below, the court of error ought in all cases to give the same judgment, which the court below ought to have rendered; thus showing, likewise, that the distinction taken in Baker v. Lade, *Carthew* 254; and Parker *v.* Harris, 1 *Salk.* 262;

VI.—3 P

[Stephens v. Cowan.]

Philips *v.* Bury, 1 *Ld. Raym.* 10; and recognized by Sergeant Williams, 2 *Saund. Rep.* 101, *w and k in notes*; King *v.* Amery, 1 *Anstr.* 178; Mellor *v.* Moore, 1 *Bos. & Pull.* 30; Pangburn *v.* Ramsay, 11 *Johns. Rep.* 141; Swearingham *v.* Pendleton, 4 *Serg. & Rawle,* 389. Where it is laid down, that if judgment be given for the plaintiff, and the defendant bring a writ of error, upon which the judgment is reversed, the judgment shall be merely to reverse the former judgment, because, as is there said, the writ is brought only to be *eased* and *discharged* from the judgment: but if judgment be given for the defendant, and the plaintiff bring a writ of error, the judgment shall not only be reversed, but the court shall give such judgment as the court below should have given; for the writ of error, as it is there alleged, is to *revise* the first cause, and to *recover* what he ought to have recovered in the first suit. But this reason is far from being satisfactory, because not well founded; for, if we refer to the form and tenor of the writ of error, setting forth the authority and duty to be exercised and performed under it, it will be seen, that they are the same, whether the writ be taken out by the defendant or the plaintiff below; and that it is, in short, in either case, a commission giving to the judges of the court of error an authority, and at the same time requiring them to *correct* the error therein complained of, and to *do speedy justice to the parties:* or as is said in 7 *Mod.* 3, the judges " are to *reform* as well as to *affirm* or *reverse.*" Besides the circumstance of there being nothing in the writ of error to warrant the distinction, it is perfectly evident, that to reverse the judgment merely upon the defendant's writ of error, without giving such judgment as the court below should have given, would in many cases neither be *correcting* the error fully, nor *doing speedy justice to the parties,* as is required by the writ, and enjoined by the constitution of the state, which requires that justice shall be administered without delay.

The important question, therefore, to be decided here, is, are the facts, as set forth in the case stated, sufficient to entitle the plaintiff in error to recover the land in question? It seems to be admitted, that if the survey made and returned upon the warrant granted to John Hendrick, under which the defendant claims, be good, that the plaintiff cannot recover: and, indeed, it is very clear, that unless this survey be wholly void, the plaintiff has not even the colour of title. The objection made to the survey is, that it was made upon land lying in Westmoreland county, and not upon land in Northumberland or Huntingdon county, according to the call of the warrant. In support of this, the 15th sect. of the act of 8th of April 1785, *Purd. Dig.* 614; and the 6th sect. of the act of the 3d of April 1792, *Purd. Dig.* 619, are relied on. By these sections, it is enacted, that in making any survey, by any deputy surveyor, he shall not go out of his proper district to perform the same, and every survey made by any deputy surveyor without

[Stephens v. Cowan.]

his proper district shall be void and of no effect. Now, admitting these sections to be applicable to land lying, as the land here does, within the purchase of 1768, though it has been said to have been ruled otherwise, the survey was not made by a deputy surveyor without his district, which is the thing that is prohibited by those sections. The survey in this case, appears to have been made by the deputy surveyor of Westmoreland county, upon land lying within that county at the time, which was clearly within his district, and therefore, does not come within the prohibition contained in the sections of the acts cited. It was certainly competent for the surveyor-general, upon being informed by the holder of the warrant here, that the land which he wished to have surveyed under it, lay in Westmoreland county, to have directed it to his deputy in that county, and if a survey had been accordingly made by such deputy, it scarcely can be doubted, but it would have been good. Now for aught that appears to the contrary, the survey here, may have been made by the deputy surveyor of Westmoreland county, under such an authority, written upon the copy of the warrant put into his hands, which has not been produced. And after an acquiescence for upwards of thirty years on the part of every body, in the survey as made and returned here, it ought to be presumed, on account of the public peace and security of titles to real estate, that it was rightly made. In Bellas *v.* Levan, 4 *Watts* 294, this court held, that such an acquiescence for upwards of twenty years in a survey returned, purporting to have been made by the deputy surveyor, going on the ground as required by law, could not be gainsaid, and that the presumption of law arising therefrom, that it was rightly made, was conclusive. But supposing it were not, the acceptance of the survey from him, by the surveyor-general, may well be considered as equivalent thereto, *Omnis ratihabitio retrotrahitur et mandato priore æquiperatur.*

And at most, it is only in effect, shifting the location of the warrant from the land mentioned therein, as lying in one county, to land lying in a different county, which in principle cannot be materially different from shifting a warrant from land described in it, as lying in a certain township, to land lying in another township of the same county, which has been every day's practice, and held good. This indulgence seems to have been conceded at all times by the state, to the holders or owners of land warrants; and, indeed, it has been the only means of redress, to which the owner of a warrant taken out for land, which happened to be previously appropriated, could resort.

Judgment affirmed.