# Lessee of George Douglass *against* William Sanderson. S. C. 2 Dall. 116.

A party allowed as a witness to prove the irregularity of a judgment, the service of a subpœna, or the inability of a witness to attend: So to prove that he has searched for the subscribing witness to a deed, or other collateral matter. Rules of evidence in the case of pedigree are much relaxed.

EJECTMENT of lands in Tyrone township in the county of Cumberland. The cause was tried at Carlisle, the last November assizes, before Mr. Justice Bryan, when a verdict was given for the plaintiff for 230 acres, part of the land declared for. Two points had been reserved for the opinion of the court in bank, which were now stated from Mr. Bryan's notes, he having died since the trial, and a new trial was prayed for on the part of the defendant.

The first point was, whether on a deed being offered in evidence, and one of the subscribing witnesses proved to be dead, and his hand writing proved, either of the parties could, by his own oath, legally ascertain that he had searched for the other subscribing witness with a subpœna, and he could not be found. It was contended on the part of the defendant, that this proof ought to have been made by indifferent witnesses:—that a party was never admitted to his oath, except on a presumed necessity, which did not exist in the present instance, as the register of *his death might be pro- [*16 duced:—that to relax the rules of law respecting evidence, would be of dangerous consequence, and that it was settled in the books before a deed could be read, you must shew that the witness thereto was dead, or strict proof be made (that is, by disinterested witnesses, as it was said) that

[Douglass v. Sanderson.]

you had searched for him and he could not be found, and cited 3 Comy. Dig. 282. 2 Atky. 48. 2 Stra. 920. 1 Atky. 444. Dall. 14. Gilb. For. Romanum. 140.

But to this it was answered and so ruled by the court, that in many instances a party was allowed to be sworn, as to prove the irregularity of a judgment,—the putting off a cause by the service of a subpœna, and the absence or sickness of a material witness, or his inability to attend, etc.:—that what the plaintiff swore here was matter of fact, and properly left to the jury as a collateral matter, and that the practice corresponded with the opinion of the judge. In Levan's lessee v. Hart tried here, Sebastian Levan, the plaintiff, was allowed to prove a search for a witness to entitle him to read certain articles of agreement, and in the case of Means and Litle's lessee v. Flora, tried at *Nisi Prius* at Lancaster, Mr. Litle, who was one of the lessors of the plaintiff, was permitted on argument, to prove that a very material witness, whose deposition had been taken, was unable to attend the court, by reason of his advanced age and indisposition of body, in order to entitle her to read his deposition. As to procuring a copy of the register, it is well known, that such registers are frequently not kept; and besides, it is not always practicable to find out when the witness died.

Second point. The plaintiff deduced his title under the heirs and devisees of Charles M'Michael, who had purchased the lands from one Ludwig Laird, who had taken out the warrant. To prove that their grandsons were the children of Charles M'Michael, the leaf of a bible, said to have belonged to the said Charles in his life time, sworn to before the chief burgess and notary public of the borough of Wilmington, in Delaware, by some of the said heirs, (as they would on no account part with the original book,) and which was extracted from the said book in the presence of the said burgess and notary, and so certified by him in the affidavit under the notarial seal, on which were entered the several births and deaths of his children, was read in evidence to the jury.

It was contended on the part of the defendant, that this affidavit and certificate ought not to have been received, and that it was preposterous for the parties who sold a disputed title, to bolster up their right by their own oath; and that all these facts *ought to have been proved under a commission to the state of Delaware, and cited Cowp. 591. Dall. 14.

It was answered, that the rules of evidence in cases of pedigree were very lax from the necessity of the case; that the deed itself was evidence of it, though the mere words of the parties; that there could be no use in examining on cross interrogatories, witnesses who were adduced to prove general reputation, and that it was ruled on full debate in the case of Fockler's lessee v. Simpson, since the revolution, at Lan-

[Douglass v. Sanderson.]

caster, in the Supreme Court, that an *ex parte* affidavit, made in England, was good evidence in case of pedigree.

*Per Cur.* The judge admitted the evidence properly to go to the jury, under the special circumstances of the case, in proof of pedigree. Amongst a number of religious persuasions in this country, we well know no registers are kept. To prove births, deaths or marriages, copies of registers have been frequently admitted: these are usually kept by the parish clerk. So of inscriptions on a tomb-stone to prove a death. In this case, the entries of the father, in the family bible, are produced for the jury's inspection. It is probable that the children only could prove the property of the book. Besides, it does not appear to us that these heirs are interested in the event of the suit. No covenant of warranty appears to us in their conveyance to the plaintiff.

*Postea* delivered to plaintiff.

Mr. Lewis *pro quer.* Mr. Bradford *pro def.*

Cited in 3 S. & R., 564, to show that the plaintiff is a competent witness, to prove notice to the defendant to produce a deed. Explained in 10 S. & R., 389.

Cited in 1 Pa., 384, in support of the proposition that the rules of evidence are relaxed in the cases of pedigree.