The opinion of the court was delivered by
Tilghman, C. J.
(after stating the case.) Several questions of law arose on the evidence, in the course of the trial, which are now to be considered, as well as one on the charge to the jury.
1. The plaintiff in order to show an ancient possession in William Oxley, offered in evidence, a paper, certified by the surveyor general, to be a true copy of a list of the first grantee or renters from the proprietaries, extracted from book No. 31, remaining in his office. This evidence was objected to by the defendant, but the objection was overruled. The book which contains the list in question, is among the public books preserved in the land office, and the list itself, it must be presumed, was made out, from ancient papers, many of which may now be lost, or perhaps not in existence. It may be presumed too, that it was made out, as a matter of public convenience, and not with a view to private disputes. Under such circumstances it ought to be evidence, and a paper of a similar kind has been decided to be evidence. There is in the land office, an ancient list oí first purchasers from William Penn. This was admitted in evidence, in the case of Morris’s lessee v. Vandwin, (1 Dall. 64.) and has often since been received without opposition. One of the defendant’s objections to this evidence was, that the book itself should have been produced. But this was unnecessary, as copies of all public papers remaining *388 in the land office, are, by act of assembly, as good evidence as the originals. The copy, in this case, was a copy of the whole list. Ah extract containing only part of it, might have been objectionable: If, for any particular reason, either party had chosen to have the book itself produced, it might have been had, by issuing a subpoena duces tecum, directed to the surveyor general. But this course ought not to be taken, without special cause, because it may produce public inconvenience, by obliging the principal officers to leave their stations, in order to attend the trial. I am of opinion, therefore, that it was proper to admit its evidence.
2. The 2d exception was to the deposition of John William Sober, taken on a commission issued to Barbadoes, and offered in evidence by the plaintiff. The commission was returned under an envelope, to which the names and seals of the commissioners were affixed. The return itself was in th* ¿blowing form, “ the execution of this commission appears by the examinations hereto annexed.” The objection' is, that the examinations were not annexed, that is, fastened to the commission. In strictness of speech, they were not annexed. But it sufficiently appeared, that they were the genuine depositions, not only from their being inclosed in a cover under the hand and seal of the commissioners, but because each deposition was subscribed by them. These commissions are extremely expensive, and should not be overthrown on slight grounds. It certainly is best, that the depositions should be actually annexed to the commission, and I would recommend it to the gentleman of the bar, to give directions in all cases to attend to this matter. Büt, as I am satisfied, that no fraud or imposition was practised in the present instance, I" think the evidence ought not to have been withheld.
3. The 3d exception was to the admission of a copy of the register of marriages, baptisms, and burials, of the parish of Si. Mi- ' chael, in the Island of Barbadoes, certified to be a true copy, by the rector of the parish, and proved by-the oath of Samuel Beresford, taken before John ./l. Beckles, deputy secretary of the Island, and notary public. It was proved that Beckles was deputy secretary, and notary public, and his hand-writing, as well as the handwriting of the rector wer ealso proved. ■ The certificate of Beckles, was given under his hand and notarial seal of office. This paper was ob jected to by the defendant’s counsel, and as I thought it worthy of consideration, I admitted it in evidence, reserving the point for the court in bank. When the evidence was offered, the plaintiff’s counsel cited the case of Hyam v. Edwards, (I Dall. 2.) in which it was decided, that a copy of the register of births and deaths of the people called Quakers in England, proved to be a true copy by an ex parte affidavit before the lord mayor of London, was good evidence in cases of pedigree. That case is very much in point, and although I did not approve of its principle, I Would not overrule it at NisiPrius, especially as I thought it pro *389 bable, it might have been followed by subsequent decisions l£ now appears that it has been followed in several cases. In Fogler’s lessee v. Simpson, (cited in 1 Yeates, 17,) it was held, that an ex parte affidavit made in England, was evidence in cases of pedigree. And in the Lessee of Douglass v. Sanderson (1 Yeates, 15,) an ex parte affidavit, made at Wilmington, in the state of Delaware, before a notary public, was admitted in evidence to verify a leaf torn out of a family bible, in which the birth of children was entered. Mr. Bradford, who opposed the evidence, contended, that affidavits of that kind should be confined to cases where the evidence was brought from beyond sea, and Shippen, J. was of opinion, that in general it should be so confined, although in that case he agreed to the admission of the evidence, from the particular circumstance of the case (the original leaf being produced in court.) I said before, that I was not satisfied with the rule established in these cases, because there is no more reason to admit ex parte affidavits in cases of pedigree, than in other cases, where it appears that better evidence is in your power. Where it is known that a register exists, a copy may always be regularly proved by sending a commission. There are some vague and loose reasons assigned in Yeates’s reports, for the admission of the evidence, such .as, the necessity of relaxing the rules of evidence in cases of pedigree, without drawing any line for the regulation of the rule. I take it, that the real motive which induced the court to admit the evidence, was, the difficulty and expense of procuring evidence from beyond sea. That appears to have been Me. Ship-pen’s opinion, for he says, in the case of Douglass’s lessee v. Sanderson, “it must not be understood that ex parte affidavits, made in other states are admissible in evidence in eases of pedigree.” Considering all the authorities then, we must take it, that the case of Hyam v. Edwards is law, and I do not see how the present case can be distinguished from it. In both, the evidence came from beyond sea, and in some respects the case before us is the strongest of the two, because besides the affidavit of Beresford, the copy was certified by the rector of the parish, whose hand-writing was proved, as was also the hand-writing of the notary.
4. The last reason assigned for. a new trial, is, that the jury were left at liberty to presume a conveyance from Honoria Harmer to the male branch of the Oxley family. In my charge, I repeated theeyidence; and made some remarks on it, and in conclusion, told the jury, that although I would not absolutely direct them to presume a conveyance, yet they were at liberty to do so if they thought the evidence warranted it. Upon subsequent reflection, it appears to me, that if either party has reason to complain of this charge, it is the plaintiff; because I might without invading the rights of the jury, have recommended to them to make the presumption. Where the facts are plain, the judge may with great propriety tell the jury, either that they ought, or ought not, to make the presumption. But in th e present case, I did not think *390 the evidence so clear on the point of possession, as to call on me for a peremptory charge, in favour of a presumption of a conveyance. It was proved that William Oxley the patentee, died in the year 1717, and there was no positive evidence who had the possession from that time to the year 1746. Yet there were circumstances from which the jury might perhaps be inclined to think, that from the time of William Oxley’s death the exclusive possession had been in his son John, and his descendants. There was positive' proof, however, of possession in John, and his descendants, by an inclosure of the lot, receipt of the rents, and payment of the taxes, from the year 1746 to the year 1783, when captain Mason, the father of the real defendants, entered. And there was no evidence whatever that Honoria Harmer, or her issue, ever had exercised or claimed any possession, received or claimed any part of the rents, or paid, or was required to pay any part of the taxes. Indeed there was no evidence, what had become of her children from the time of her death to the moment of the trial. Now, from Honoria’s death to the trial, was a period of 81 years; during 37 of which the male branch of the Oxley family had the absolute possession. How is this to be' accounted for but by a presumption that the title of Honoria Harmer had been vested in the' male branch of the family? In eld times, it was not customary to put deeds on record, although there was a law authorising the recording. It was not till the year 1775, that an act was passed requiring them to be recorded. It is true, that,- supposing the title of William Oxley to have descended to his son John) and daughter Honoria, the entry of John would have enured to the benefit of Honoria. They would have been tenants in common, and the bare perception of the profits by John, would.not have been an ouster of Honoria. But there were strong circumstances, added to the perception of the profits. John lived in Barbadoes, and received the rents, and paid the taxes, by his agents here. Honoria lived on the spot, and so it must be presumed, did her children. Now it is out of the usual course of human affairs, that under such circumstances, neither Honoria Harmer, nor her children, should have made any manner of claim, supposing them to have title. It is true, that prior to the year 1785, it required 60 years to bar a title by the statute of limitations. But since the year 1785, twenty-one years adverse possession is a bar. So that for ought that appears the descendants of Honoria, if any there are in existence# would be bound by the adverse possession of the defendant. Indeed the counsel for the plaintiff contended, that inasmuch as there was no evidence of the existence of any issue of Honoria it should be presumed that they were extinct, in which case if they died before the year 1794, there title would have descended to the male' branch. The law is so, and the fact of there being extinct was left to the jury. I do not know, that there is any positive rule defining the time necessary to create a presumption of conveyance. In case of easements# and other incorporeal hereditaments# which *391 do not admit of actual possession, the period required by law for a bar by the statute of limitations is usually esteemed as sufficient ground for presumption. But that rule is not always applied to cases admitting of actual possession. In such, the period of presumption has been varied according to circumstances. In the case of Hepburn v. Hepburn, (5 Cranch. 263. 276.) a deed of partition was presumed after about 35 years possession in severalty. In Earl v. Baxter, (2 Wm. Black, 1228,) possession had been held 73 years, under a lease for 1000 years. The party in possession was unable to produce all the mesne conveyances down to himself, and the court decided, that it might be left to the jury, with a recommendation to presume the conveyances. The rational ground for presumption is, when the conduct of the party out of possession cannot be accounted for without supposing that the estate has been conveyed to the one who is in possession. That appears to me, to have been the present case, and therefore, I am of opinion that the verdict should stand.
Judgment affirmed.