# Broadrick v. Broadrick, Appellant.

*Beneficial association—Beneficiary—Antenuptial agreement—Mother—Wife—Evidence—Party dead—Witness.*

The rules of a beneficial association permitted the members to substitute one beneficiary for another. A member who was a married man designated his mother as beneficiary, but subsequently entered into an agreement with a woman who was ignorant of his prior marriage, that if she would marry him he would substitute her as a beneficiary. A marriage license was procured, and a wedding ceremony was performed. The member died without having made the substitution. Both the mother and the woman claimed the fund. The money was paid into court, and an issue was framed in which the woman was made the plaintiff and the mother, the defendant. *Held*, (1) that the plaintiff was a competent witness to prove the antenuptial agreement; (2) that the plaintiff was a competent witness to prove that she was married by a minister of the gospel and that she had been given by him a marriage certificate which she offered in evidence; (3) that the antenuptial agreement was not invalidated. by the prior marriage if the plaintiff was ignorant of such marriage; (4) that if plaintiff was ignorant of such marriage and defendant had no superior equity based on a prior agreement with her son, plaintiff was entitled to the fund; (5) that a verdict and judgment for plaintiff should be sustained.

*Evidence—Witness—Competency—Party dead—Beneficial association.*

Where a member of a beneficial association whose rules permit a substitution of beneficiaries, designates a person as beneficiary and subsequently enters into a valid agreement to substitute another, but dies before actually doing so, the designated beneficiary does not represent any right or interest of the decedent in the death fund, but takes if he takes at all in his own right. Consequently the other c'aimant to the fund is a competent witness to prove his contract with decedent.

It is not enough that one of the parties to the litigation has derived his right from a dead person, if the opposite party has derived from him no right to the thing derived, and no right to dispute the derivation.

*Evidence—Marriage certificate—Proof.*

A marriage certificate does not prove itself. Proof of the signature of the person by whom it purports to have been signed, and of his authority to perform the marriage ceremony, is necessary.

*Evidence—Signature—Letters.*

Signatures to letters are sufficiently proved by a witness who testifies that she saw the party write once, and that she is positive as to their genuineness.

*Marriage—Antenuptial contract—Extinguishment.*

Marriage is sufficient consideration to support an antenuptial contract. The common-law rule that an executory contract is extinguished by a subsequent intermarriage of the parties is not applicable in equity in the case of antenuptial contracts made in consideration of marriage, since it would be inequitable that the intermarriage of the parties, upon which alone the contract is to become effective, should itself work a destruction of the contract.

An antenuptial agreement is not invalid by reason of the existence of a prior marriage of the husband, where the woman was ignorant of such marriage and the existence of a living wife.

Argued Dec. 15, 1903. Appeal, No. 181, Oct. T., 1903, by defendant, from judgment of C. P. Blair Co., Oct. T., 1902, No. 179, on verdict for plaintiff in case of Belle Broadrick v. Louisa Broadrick. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Issue to determine the ownership of a death beneficial fund. Before BELL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1) in admitting the evidence of plaintiff; (2) in admitting the marriage certificate; (3) in admitting the letters of John Broadrick; (4–15) various instructions.

*Harry A. McFadden*, with him *Herbert M. Hagerman*, for appellant.—Where one party to a contract is dead, the survivor shall not be a competent witness of the transaction: Smith's Estate, 35 P. L. J. 276; Arrott Mills Co. v. Way Manufacturing Co., 143 Pa. 435; Yeakel v. McAtee, 126 Pa. 600; Tarr v.

Robinson, 158 Pa. 60; Dicken v. Winters, 169 Pa. 126; Gardner v. McLallen, 79 Pa. 398; Hunt's App., 100 Pa. 590; Endlich & Richards on Married Women, sec. 342.

A certificate of marriage is not admissible to prove a marriage: Hill v. Hill, 32 Pa. 511; Stull's Estate, 183 Pa. 625; Com. v. Stump, 53 Pa. 132; Smith's Est., 3 Lack. L. N. 122; Gross's Est., 9 Pa. Dist. Rep. 76; Jones v. Jones, 4 Pa. Dist. Rep. 223; King's Est., 9 Kulp, 54.

These letters under all the rules of evidence, as we view them, and decisions of the courts, were clearly inadmissible: Sweeney v. Oil & Gas Co., 130 Pa. 193; Slaymaker v. Wilson, 1 P. & W. 216; Baker v. Haines, 6 Wharton, 284; Peck v. Parchen, 52 Iowa, 46 (2 N. W. Repr. 597); Cooper v. State, 90 Ala. 641 (8 So. Repr. 821).

Where the insured designates another person as beneficiary, the right of the latter as a rule becomes at once so vested that it cannot be disturbed by any assignment or will, or in any way without his consent: Washington Central Bank v. Hume, 128 U. S. 195; Krause's Est., 28 Pitts. L. J. N. S. 29; Vollman's App., 92 Pa. 50.

It is well established that if there are rules for changing the beneficiary they must be followed as was said in Masonic Mutual Association v. Jones, 154 Pa. 107; Armstrong v. Warren, 83 Hun, 217 (31 N. Y. Supp. 665); Bacon on Beneficial Societies, secs. 244, 252, 253; Burst v. Weisenborn, 1 Pa. Superior Ct. 276; Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457.

The term "widow" is confined to law of marital relation: Grand Lodge v. Elsmer, 26 Mo. App. 108; Keener v. Grand Lodge, 38 Mo. App. 543.

*Thomas H. Greevy,* with him *Matthew M. Morrow,* for appellee.—This being a fraternal organization, the decedent had no interest or property in the fund, but simply had the power to designate or appoint some one to receive it; even this power is not an interest or property, as is clearly established by the following authorities: Warner v. Modern Woodmen of America, 61 L. R. A. 603; Masonic Aid Assn. v. Jones, 154 Pa. 99; Hamill v. Supreme Council, 152 Pa. 537; Fisher v. Donovan, 57 Neb. 361; 44 L. R. A. 383; 77 N. W. Repr. 778; Rollins v. McHatton, 16 Colo. 203 (27 Pac. Repr. 254); Hellenberg

v. District No. 1, I. O. of B. B., 94 N. Y. 580 ; Bacon Ben. Soc., sec. 237, 241 ; Eastman v. Relief Assn., 62 N. H. 555 ; Keener v. Grand Lodge A. O. U. W., 38 Mo. App. 543 ; Ben. Soc. v. Clendinen, 44 Md. 429 ; Arthur v. Odd Fellows Ben. Assn., 29 Ohio, 557.

A wife is a competent witness to prove a marriage contract between her and her deceased husband in a controversy where the legality of the marriage is in question : Greenawalt v. Mc-Enelley, 85 Pa. 352 ; Drinkhouse's Est., 151 Pa. 294.

The admission of the marriage certificate as evidence is a corroboration of plaintiff's testimony, and certainly there was no error in admitting it.

This case is ruled by Penna. R. R. Co. v. Wolfe, 203 Pa. 269.

OPINION BY RICE, P. J., May 19, 1904 :

On March 29, 1900, Joseph C. Broadrick became a member of the Pennsylvania Railroad Voluntary Relief Department, and received a certificate entitling the beneficiary designated therein (Louisa Broaderick, his mother), to $500 upon his death, which occurred on December 14, 1901. In the meantime, on April 10, 1901, a wedding ceremony was performed between him and one Belle Halen. It appears, however, that at this time Joseph Broadrick had a living wife. Upon his death the money due from the relief department was claimed by Louisa Broadrick by virtue of the designation of her as beneficiary, as above stated, and by Belle Halen, or Broadrick, by virtue of an alleged antenuptial contract whereby Joseph Broadrick, in consideration of her marrying him, obligated himself to have her substituted as beneficiary, which under the rules of the relief department he had a right to do. The relief department paid the money into court and a feigned issue was awarded, in which Belle Broadrick was plaintiff and Louisa Broadrick was defendant, to determine the ownership of the fund. The trial resulted in a verdict for the plaintiff, and judgment having been entered thereon the defendant took this appeal.

1. The first question raised by the assignments of error is as to the competency of the plaintiff to testify to matters occurring in the lifetime of Joseph Broadrick and especially as to the antenuptial contract between her and him. The defendant

claims that she was incompetent under clause *e*, section 5 of the evidence act of 1887. There is plausibility in this contention which at first inclined some of us to the view taken by appellant's counsel, but a closer examination has led to the conclusion, in which the majority of my brethren concur, that it cannot be sustained. Prima facie the defendant was entitled to the fund. Her right attached immediately upon the issuing of the certificate in which she was designated as beneficiary, but did not become complete until the death of Joseph Broadrick, and was subject to his right to substitute another as beneficiary in the mode described by the rules of the relief department, and, under the authority of Pennsylvania Railroad Co. v. Wolfe, 203 Pa. 269, subject also to his right to make a contract with another to substitute her as beneficiary, which, as against him, as well as against the regularly designated beneficiary, would be enforceable in equity. But although the defendant's right did not become complete until the death of Joseph Broadrick, yet, according to the doctrine of Hamill v. Supreme Council of the Royal Arcanum, 152 Pa. 537, she takes, if she takes at all, in her own right as the regularly designated beneficiary, and does not represent any right or interest of the decedent in the fund. " The fund in fact was never his property. He had a power of appointment only, and such power did not create any property in him :" Masonic Aid Association v. Jones, 154 Pa. 99. True, the plaintiff's right, if she has any, arises out of a contract between her and the decedent, but it does not necessarily follow that in this issue she is an incompetent witness to matters occurring in his lifetime. " It is not enough that one of the parties to the litigation has derived his right from a dead person, if the opposite party has derived from him no right to the thing derived, and no right to dispute the derivation : " Trickett on Witnesses, section 142, citing as an appropriate illustration of this doctrine the case of Royer v. Ephrata Borough, 171 Pa. 429. Some right of the decedent " thereto or therein," that is to or in the contract or the fund, must have passed by his own act or the act of the law to a party on the record who represents his interest in the subject in controversy in order to disqualify the other party to the contract as a witness. But no right under that contract passed from the decedent to the defendant by any act of his

or by operation of law; nor does she represent any interest of his in the subject in controversy. She represents her own interest, and has standing to contest the asserted equitable claim of the plaintiff to the fund by reason of the fact that under the rules of the relief department she is prima facie entitled thereto as the regularly designated recipient of it, and not by reason of the fact that any property or interest of the decedent in the fund passed to her. This seems to be the doctrine of Hamill v. Supreme Council, supra, where, in an action of assumpsit by the designated beneficiary against the association it was held that members of the association, although personally interested to defeat the claim, were competent witnesses to testify to matters occurring in the lifetime of the member to whom the certificate issued. See also Solis v. Blank, 199 Pa. 600, where the doctrine was reaffirmed in the following language: " The right to the benefit was never in the member. It was in the beneficiary and no other than she could maintain an action for its recovery. She took in her own right alone as the beneficiary of the fund, and did not represent any right or interest of her deceased husband." The seeming inequality which arose from permitting the plaintiff to testify to the antenuptial contract with the decedent is not greater nor more apparent than that which arises when a party to a contract made with an agent dies and the agent is permitted to testify, and vice versa; nor is it greater than that which the act itself recognizes in drawing a distinction between persons whose interests are adverse to the interest of of the decedent in the subject in controversy and those whose interests are in harmony therewith. See Smith v. Hay, 152 Pa. 377. Many other illustrations might be cited to show that this act does not work out nor preserve perfect equality; and it is to be borne in mind that it is not the province of the courts to expand its provisions by construction so as to cover every case where the lips of one party to a contract or transaction have been closed by death. " Since the passage of the act of May 23, 1887, competency is the rule, incompetency the exception. Departure from the common-law rules of evidence are for the legislature, and when so made, inequalities, real or apparently so, resulting from the legislative removal of the disqualifications of witnesses, cannot be urged as reasons

why judges ought not to read the words of legislators as they are written :" BROWN, J., in Allen's Est., 207 Pa. 325. We conclude that the court was right in holding that the plaintiff was a competent witness.

2. The defendant testified that she and Joseph Broadrick were married on April 10, 1901, in Camden, New Jersey, by a minister of the gospel, and that the latter then and there gave her a certificate of marriage. If, as we have determined, she was a competent witness to matters occurring in the lifetime of Joseph Broadrick, we see no reason to doubt the admissibility in evidence of the certificate in connection with her testimony. But the certificate is not such an instrument as proves itself, and if it had been offered by itself, without proof of the signature of the person by whom it purports to have been signed, and of his authority under the law of New Jersey to perform the marriage ceremony, it would not have been admissible: Hill v. Hill's Admr., 32 Pa. 511.

3. This case was tried with a similar case in which Belle Broadrick was plaintiff and Louisa Broadrick, the defendant in this case, and John Broadrick, her husband, were defendants. Upon the question of the marriage of the plaintiff and Joseph Broadrick it was relevant to show that these defendants, being his parents, recognized them as husband and wife. As proof of this relevant fact the plaintiff offered in evidence certain letters purporting to have been written by John Broadrick. These were objected to upon the ground, principally, that there was not sufficient proof that they were in his handwriting. One of the recognized means which a witness has of becoming acquainted with a person's handwriting is by seeing him write. The witness in the present case had seen the party write but once, nevertheless she was quite positive as to the genuineness of the papers in question. It must be conceded that the evidence that the letters were in the handwriting of John Broadrick was very slight, but we cannot say that it was incompetent, or insufficient to warrant the admission of the letters in evidence for what they were worth, which, after an examination of them, seems to us very little : 1 Greenleaf on Evidence, sec. 577 ; McNair v. Com., 26 Pa. 388 ; Watson v. Brewster, 1 Pa. 381 ; Shitler v. Bremer, 23 Pa. 413 ; Wilson v. Van Leer, 127 Pa. 371.

4. The remaining assignments of error relate to the charge and answers to the points, and may be considered together. Marriage is, in contemplation of law, a consideration of the highest value and has always been regarded as sufficient of itself to support an antenuptial settlement. The common-law rule that an executory contract is extinguished by the subsequent intermarriage of the parties is not applicable in equity in the case of antenuptial contracts made in consideration of marriage, since it would be inequitable that the intermarriage of the parties, upon which alone the contract is to become effective, should itself work a destruction of the contract: 19 Am. & Eng. Ency. of Law (2d ed.), pp. 1227, 1333. In a case closely resembling the case at bar it was held that where a member of a railroad beneficial association after the death of his first wife substituted his sister as beneficiary in the manner provided by the rules of the association, and subsequently married after having made an antenuptial agreement by which, in consideration of the marriage, he agreed to make his second wife the beneficiary instead of his sister, and he died before making the substitution, the wife and not the sister was entitled to the fund which the association, waiving its rights, had paid into court: Penna. R. R. Co. v. Wolfe, 203 Pa. 269. This result was reached by applying the principle that equity will treat that as done which ought to have been done. The court held in the present case that this principle would be applicable here, although the member had a lawful wife living at the date of his intermarriage with the plaintiff, provided the plaintiff was ignorant of that fact, and provided further that the defendant did not have a superior equity growing out of an alleged prior contract with her that if she and her husband would care for the minor child of Joseph Broadrick they should have all the money due and payable upon his death under this and other benefit certificates. Under the evidence it was not within the province of the court to decide either of these questions of fact. They were for the jury and were submitted to them in a clear, adequate and impartial charge. This being so, their verdict implies two findings, first, that the plaintiff married Joseph Broadrick in good faith, in ignorance of the fact that he had a wife living, and upon the inducement of his promise to have her substituted as beneficiary ; second, that there was no prior

contract between him and the defendant, or conduct on his part, which gave her a superior equity. The question then arises whether the alleged antenuptial contract is void and unenforceable by reason of the fact that the marriage was invalid. It is quite clear that if it had been executed a court of equity would not have lent its aid to annul the settlement: Ayerst v. Jenkins, L. R. 16 Eq. 275; Ogden v. McHugh, 167 Mass. 276 (45 N. E. Repr. 731). It is equally clear that the contract to substitute Belle Broadrick as beneficiary, being executory, would be contrary to public policy and therefore unenforceable either at law or in equity, if she entered into it with knowledge that he had a lawful wife in being. But the fact being established that she is an entirely innocent party, it would be unjust to take away the rights she acquired in return for acts of value to the other contracting party, which were a detriment to herself, and which only failed of complete performance on her part by reason of the prior marriage of the other contracting party, of which he wrongfully kept her in ignorance. See Ogden v. McHugh, supra. No rule of public policy would be violated by enforcing the contract as against him, and the defendant, who, under the facts found by the jury, is but a volunteer—Penna. R. R. Co. v. Wolfe—stands in no better position.

All of the assignments of error are overruled and the judgment is affirmed.