# Watterson's Appeal.

1. Although a widow's statutory interest in the lands of her deceased husband, under the Act of 1833, comes not within the definition of common-law dower, it is, nevertheless, an estate of freehold, and said interest vesting, as it does, in her at the instant of her husband's death can only be divested by her own act, as by accepting under her husband's will, or by her deed or writing, as prescribed by the Statute of Frauds and Perjuries.

2. Once invested with title the widow cannot divest it by parol without consideration as against creditors, and not having parted with it prior to her bankruptcy it passes to her assignee.

October 5th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1880, No. 165.

Appeal of A. V. D. Watterson, trustee *cum testamento annexo* of the estate of William Maloney, deceased, from the decree of court upon the exceptions to the account of appellant as said trustee.

On the 28th of December 1870, William Maloney died, leaving a widow and five minor children.   By his will he, inter alia, made the provision in regard to his policy of life insurance which will be found in the opinion of this court.

On June 1st 1878, John Mullin was discharged from his executorship of said decedent's estate, and appellant was appointed trustee, *cum testamento annexo*, in his place.   On October 15th 1879, appellant was cited by the assignee in bankruptcy of Mullin & Maloney, to file his account as trustee of said estate.   He complied therewith ; and to said account the assignee filed, inter alia, the following exceptions :

3. By the will of William Maloney Mrs. Bridget Maloney is entitled to one-third of the rents collected from the trust estate, which now is payable to exceptant as her assignee in bankruptcy, and the accountant has paid over to her all the rents collected by him except the taxes, &c., and this without an order of court. His action is excepted to, and exceptant claims the one-third of the net income from said estate, and, therefore, asks that accountant be surcharged with one-third of the amount so unlawfully paid out, to wit, about the sum of $808.35.

4. All the items of cash claimed credit for in said account as paid Mrs. B. Maloney, guardian, are objected to as improper.

It was claimed on behalf of the assignee in bankruptcy of Mrs. Maloney, that she must be presumed to have elected to take under the intestate law as widow, and that he was entitled, by virtue of the assignment to her interest so derived.

On the contrary it was alleged that Mrs. Maloney elected to take, and actually received the insurance money, in lieu of her dower and interest in said estate, a short time after the decease of her husband, the contents of the will having first been fully and satisfactorily explained to her. This claim, it was contended, was supported by the testimony. Mrs. Maloney testified, "I did not want any of the real estate; there was very little for the children at the time: I was very well satisfied. I decided at the time," (of her husband's death) "and when Mr. Fetterman read the will to me, I told him I would take the money; he said that if I so decided I would not have anything under the will; I told him I did not want anything else under the will." Also, "I was perfectly satisfied; I had knowledge of the will before my husband's death: he told me what he was going to do; I was perfectly satisfied." The question having been asked her, "Did you ever change that decision afterwards and claim any part of the estate?" She replied, "No, sir; never! never claimed any." She, in fact, never received anything from the executors or trustee, as widow, under the intestate law, and during the lapse of years between the death of her husband and the bankruptcy proceedings never claimed anything. On the contrary, she frequently asserted that she desired nothing else from her husband's estate. "I decided to take nothing at all of the real estate; it (the insurance money) was enough for me at the time; I considered I had a very good share at that time; it was enough for me at the time—even more than my share."

G. L. B. Fetterman, testified: "I told her, unquestionably, and my recollection is—I may be mistaken—but my recollection is that I explained to her also the effect of her election upon the intestate law; I am satisfied that she knew from the conversations, and I endeavored to make the conversations as clear as possible to her, that she knew what her rights were under that will and under the intes-

[Watterson's Appeal.]

tate law.   I told her if she took the $10,000 she was cut out from taking anything else under the will, and my impression is I told her at the same time what her rights were under the intestate laws, and she determined to take the $10,000." And on this point John Mullin testified, as follows: "Yes, sir; she took the $10,000; she took it in the place of her dower; she had nothing to do with the estate; she communicated that fact to me, what she would take; she decided she would take the $10,000."

Miss Mary Maloney, daughter of Mrs. B. Maloney, testified: " She did thoroughly understand about the will, that she could take her $10,000, and besides that the law allowed her one-third; but she said she considered the estate was small enough for the children; I wanted her to build on the lots on Robinson street at the time, and have it as a home, and take her third; she said no, that she would rather take the money; my mother took the insurance money."

The court, in an opinion, inter alia, said:

" There was no contrivance by which William Maloney could have deprived his widow of the right to take both the insurance money and her interest as widow under the intestate laws in his estate, had he attempted it; but he did not attempt it. He said nothing about intestate laws directly or indirectly. He simply made it a condition of acceptance by his widow of benefits under his will, relinquishment by her of individual title to the insurance money, and consent that it become part of his estate. No one denies that he had a perfect right to impose this condition, and she to refuse the will and to take under the intestate laws. Refusal of the one necessarily involved acceptance of the other. That she did refuse acceptance of the benefits of the will, the testimony shows. Her refusal, by mere operation of law, invested her with the interest of widow in his estate. The insurance money was hers, notwithstanding and without the will. It is immaterial that she was ignorant of her right to take both the insurance money and her interest under the intestate laws. Knowledge on her part was unnecessary to vest title in her. Descent is daily cast without the knowledge of heirs, and no one doubts the validity of the title so derived. So, valid deeds may be made without the actual knowledge of the vendee: Reed *v.* Robinson, 8 W. & S. 329. Acceptance of title in such cases is presumed. Once invested with title, Mrs. Maloney could not divest it by parol without consideration as against creditors. Not having parted with it prior to her bankruptcy, it passed to her assignee: Thomas *v.* Simpson, 3 Barr 60. In what position, then, stands the trustee? He made distribution without the authority of this court at his peril. He did not even make inquiry of the widow in what relation she stood to the estate, but assumed that she was entitled to the whole net income as testamentary guardian, and is, therefore, entitled to the less sympathy for the

loss which must result to himself therefrom. The assignee was clearly entitled to the widow's interest from the date of bankruptcy."

The court then made a decree which contained, inter alia, the. following direction:—

"That the third exception be sustained, and accountant is surcharged with one-third of the rents received and included in account, less one-third taxes, repairs, &c., $389.74. That the fourth exception be sustained, and that the amount surcharged as above, viz., $565.66, be paid by the said trustee to the assignee in bankruptcy of the firm of Mullin & Maloney, less the clerk's costs in this proceeding."

From this decree this appeal was taken.

*A. M. Brown* and *A. V. D. Watterson*, for appellant.—Mrs. Maloney knew the nature and extent of her husband's estate, and is bound by her election. An election may be by parol as well as in writing, and it may be evidenced by long acquiescence: Cauffman *v.* Cauffman, 17 S. & R. 16. For a period of ten years Mrs. Maloney neither received nor claimed any interest in her husband's estate, nor does she now. Any testamentary provision, clearly intended to be in lieu of dower if accepted deliberately and understandingly, will be a bar to a claim for dower: Duncan *v.* Duncan, 2 Yeates 302; Hamilton *v.* Buckwalter, Id. 389; Herron *v.* Hoffner, 3 Rawle 393; Allen *v.* Martin, 2 P. & W. 310; Cox *v.* Rodgers, 27 P. F. Smith 160; 4 Kent's Com. 57; Kennedy *v.* Mills, 13 Wend. 553. Lapse of time renders an election absolute and precludes the right to avoid it by a tender of compensation: Fulton *v.* Moore, 1 Casey 468, 476; vide note to Streatfield *v.* Streatfield, Leading Cases in Equity, vol. 1, part 1, 541, 573.

As to what acts determine an election, vide Ardesvife *v.* Bennet, 2 Dick 463; Butrick *v.* Broadhurst, 1 Vesey 170; 2 Story Eq. Jur., sects. 1097, 1098; Frank *v.* Frank, 3 Myl. & Cr. 171; Brice *v.* Brice, 2 Malloy 21; Thurston *v.* Clifton, 21 Beavan 447; Earl of Northumberland *v.* Earl of Aylesford, Ambler 540; Blunt *v.* Gee, 5 Cal. 481; Clay *v.* Hart, 7 Dana (Kentucky) 1, 6; Thompson *v.* Hoop, 6 Ohio 480; 1 Leading Equity Cases 302, 320, 321, and cases there cited.

*Barton & Sons, Josiah Cohen* and *H. H. McCormick*, for assignee.—All the decisions cited by the counsel on the other side go to show that when the widow takes something under the will of the husband which she was not entitled to under the intestate laws, that then she is estopped from afterwards repudiating the will and claiming under the intestate law; but in this case she did not receive anything under the will, the insurance money was her own. But as she took nothing under the will, it left her as if no will had ever

[Watterson's Appeal.]

been made, and entitled to take, under the intestate laws. Her interest at that time was a vested interest in her deceased husband's real estate, of which she could only divest herself by writing, signed by her, the party to be bound.

The assignee was such, not only of the firm, but also of John Mullen and Bridget Maloney individually. His title to the assets dates back to December 3d 1877, the date of their adjudication as bankrupts. And, of course, whatever title Bridget Maloney then had in this estate passed to her assignee for the use of creditors.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1880.

Though a widow's statutory interest in the lands of her deceased husband, under the Act of 1833, comes not within the definition of common-law dower, it is, nevertheless, an estate of freehold: Schell's Appeal, 4 Wright 170; Gourley v. Kinley, 16 P. F. Smith 270; Bachman v. Chrisman, 11 Harris 162. Moreover, this interest, vesting as it does in her at the instant of her husband's death, can only be divested by her own act, as by accepting under her husband's will, or by her deed or writing, as prescribed by the Statute of Frauds and Perjuries. Mrs. Bridget Maloney, immediately on the death of William Maloney, her husband, had vested in her an estate for life in the one-third of the realty of which he died seised, which, in due course of law, passed to the assignee in bankruptcy of the firm of Mullin & Maloney, of which firm she was a member, unless previously to the bankruptcy of that company she had, by some means, been divested of that estate. But this effect could not be produced by her oral declarations to Mr. Fetterman and others, that she had no interest in her husband's estate, and that she desired the whole of it to go to her children. The Statute of Frauds and Perjuries rendered such declarations of no account whatever. Unless, therefore, her estate was barred by her acceptance under the will of her husband, that estate remains intact, and has passed to her assignee.

Now, it is hardly worth our while to examine authorities as to the effect of the acceptance, by a widow, of a testamentary provision in her favor upon her dower, for all that is definitely settled by our Act of Assembly. If Mrs. Maloney did accept under the will of William Maloney, whether in writing or parol, or whether that will gave her little or much, the appellant has made out his case, and he must have a reversal of the decree of the court below.

Thus the case turns upon a question of fact, and about the law bearing upon it there is, or ought to be, no controversy.

Let us, then, consider the provisions of the will and her action upon them. The eighth item provides as follows: "Whereas, I have a policy on my life in the Ætna Life Insurance Company, of Hartford, Connecticut, No. 47,986, for the sum of ten thousand

[Watterson's Appeal.]

dollars, for the benefit of my wife, Bridget Maloney, and, whereas, it is my desire that the same should be considered as part of my estate, and follow the directions hereinafter, in item ninth, provided for my residuary estate, I hereby direct my executors, with the consent of my wife, to invest the amount of said life insurance, when collected, in good productive real estate for the benefit of my family, the same to follow the dispositions hereinafter provided in item ninth for my residuary estate.    But in the event of my wife refusing to consent to said investment and disposition thereof, and requiring the whole insurance money to be set apart for her sole and separate use and benefit, then and in such case, I hereby will and direct that she take under this will nothing but the said sum of ten thousand dollars insurance money, and that all the devises and bequests to her under this will be null and void and of no effect."

It will be observed that whether the policy above mentioned, and which belonged to Mrs. Maloney, should become the subject of the devise or not depended upon her assent.    If she refused to agree to his wishes, the policy dropped out of the will, since of himself he had no power to make it the subject of devise.

She did refuse to have her own property thus disposed of, and by this refusal she was as effectually put out of the will as though she had never been mentioned in it, or as though she had formally refused to accept under it.

What, then, did she take by virtue of the will?    For in order to bar her dower she must have received something by force of that instrument.    "I hereby direct," says the testator, "that she take under this will nothing but the said sum of ten thousand dollars insurance money."

This, however, confessedly, she took not by virtue of the will, but by virtue of her own right.    He certainly could not give to her what he had not to give.    In fact he made no such attempt. He but provided that should she allow her property to come into his will, she should have the benefit of certain devises which included that property, but if she would not so agree, she was to be wholly excluded from the provisions of that instrument, and left to her legal rights.

It is, then, as we have already said, manifest that she took nothing under the will by which her dower could be barred.    What she got was her own property, and this she would have had had the will never been written.    It is therefore idle to say that, by keeping her own property, she elected herself out of her dower.

The doctrine of election would have applied had she chosen to take under the will; for, by that act, she would have at once surrendered her right both to the life policy and to dower, but there could be no such effect when she refused to accept the devise in her

favor.   It would, indeed, be monstrous if a husband could thus devise a wife out of her dower, and that in spite of her legal right of election.   As in the present case, a husband devises to his wife her own property, and, as to her, it is all loss and no gain; if she accepts her dower is gone, but if she refuses to accept, and elects to retain her own property, she also loses her dower.   This will not do; a devise of this kind has not even the recommendation of ingenuity; it is a mère fraud on the rights of married women, and a gross perversion of the laws provided for their protection.

> Decree affirmed, appeal dismissed, and it is ordered that the costs be paid by the appellant.

Chief Justice SHARSWOOD dissented.