## Marks's Estate.

Argued May 20, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George Hay Kain,* with him *Richard E. Cochran,* for appellant.

*John A. Hoober* and *J. E. Vandersloot,* for appellees, were not heard.

PER CURIAM, July 1, 1929:

The court below refused to award to appellant, the surviving spouse of William Marks, deceased, her widow's share in his estate under the intestate laws of Pennsylvania. The sole question before us concerns the construction and effect of an antenuptial contract between decedent and appellant, executed September 20, 1924, four days before their marriage. The contract recites that the parties each owned certain separate estates in real and personal property, and, in consideration of the marriage about to be entered into, they agreed that "the use, ownership, control and disposition of all property, real and personal, of the parties......shall continue and remain in each of them respectively in the same condition and under the same rights in the law as if the said William H. Marks and Sarah Anna Kain were sole and unmarried; provided, nevertheless, that should the death of William H. Marks precede that of Sarah Anna Kain, then in that event, from and after the death of the said William H. Marks, the said Sarah Anna Kain shall be entitled to have and receive out of the estate of said William H. Marks a yearly sum, or annuity of seven hundred and fifty dollars for and during the term of [her] natural life......or so long as she remains the widow of......William H. Marks." There is no express provision in the agreement that appellant released the right to inherit from her husband;

but, as the court below correctly states, "This would not prevent its [having] that effect, if the language used shows it was understood and intended by the parties to release such right."

At the time of this contract, or marriage settlement, appellant was a woman never previously married and decedent was a widower; neither had any children and none was later born to them. The parties were both of mature age, and appellant had full knowledge of the extent of her fiance's estate; considering the total amount of the principal and income, the provision for her benefit, in case of the prior death of her husband, is in no sense an unfair one; and the contract between the parties "indicates in terms tolerably clear that the [wife] intended to relinquish all the rights which [she] had, or could have, in the [husband's] property not only during but after the coverture." On this state of facts, she cannot claim under the intestate law against her husband's estate. Talbot v. Calvert, 24 Pa. 327, 330, from which the above quotation is taken, contains no ruling inconsistent with the conclusion of the court below in the present case; there the agreement showed that it was not to continue beyond coverture, while here, it in effect expresses a contrary intent.

The court below rightly held that "the whole tenor of the contract [shows] it was not intended that [appellant] should take both under the contract and under the law"; therefore, she has failed to establish her case.

The decree is affirmed at cost of appellant.