Estate of B. L. Dick, Deceased.

Argued April 20, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*William McElwee, Jr.,* and with him *Wm. W. Stevenson,* for appellant, cited: Walsh v. Kelly, 34 Pa. 84; Bailey v. Cooney et ux., 284 Pa. 508.

*H. A. Wilkison* of *Akens & Wilkison,* for appellee, cited: Talbot v. Carvert, 24 Pa. 327; Rice v. Rice, W. N. C. 672.

OPINION BY LINN, J., July 8, 1931:

The principal question is whether the appellee, by post-nuptial agreement with her husband, released her right, as surviving widow, to take part of his estate under the intestate law. Benton L. Dick died testate, bequeathing his property to his children and grandchildren. He left no real estate. His widow filed a petition for the allowance of her exemption of $500, and also an election to take against the will. The exemption was refused on the ground that she had forfeited her right to it by living separate and apart from her husband (Braum's Estate, 86 Pa. Superior Ct. 245), and she has not appealed from that determination.

Appellants, decedent's sons, as legatees, moved to strike off and vacate the widow's election; she answered; testimony was taken, and after argument, the rule was discharged.

Decedent and his wife were married in 1924, each having adult children by former marriages. They were of about the same age; he was seventy-eight at the time of his death in April, 1929. On June 27, 1925, they separated pursuant to the terms of an agreement formally executed. The learned court below was of opinion that by their agreement, they had provided merely for contingencies during the life of both, and

had made no provision for the distribution of the property of either on the death of the other; that the law governed the devolution of property; and that the widow was entitled to exercise rights conferred on her by law, and not taken away by the agreement.

The record shows that at the time of their marriage, and when the agreement was executed, the wife owned real estate and was possessed of personal property, and that the husband had personal property only; it is not alleged that the agreement was unfair.

In view of the earnest argument presented by the learned counsel for the appellant, we insert the following analysis of the agreement, stated in the terms of the parties, and in the order in which they appear.

1. He agrees: (a) his wife "shall live where she pleases without let or hindrance from him;" (b) "she shall have full charge and control of all her property real and personal, as though they had never been married......" (c) to join with her "to sell or encumber her property......[and] without obligating himself.......agrees to join her in the execution of any papers necessary."

2. She agrees: (a) her husband "shall be free to live when and where he pleases without let or hindrance from her;" (b) he "shall have full, free and exclusive control of any and all property he may acquire or own without consulting her." (c) "to execute promptly and without charge" any paper he may require in the transferring of any property he may own."

3. "The said parties......in consideration of all the foregoing each remise and release, quit-claim and forever discharge the other of any claim or charge or demand whatsoever, they or either of them may or might have against the other by reason of their marriage vows and contract."

4. She (d) "releases [him] from all claims of sup-

port, maintenance, alimony or any matter or character whatsoever;" he (d) "releases [her] from any claim he hath or might have upon her for services, companionship or any interest he hath or might have in her real property;"

5. "to the end that hereafter they live separate and apart from each other, freed from every obligation entered into by reason of their marriage contract."

It will be observed that by the subdivisions lettered a, b, c, and d, each party contracts concerning the same subject matter, applicable only to conduct during the life of both; the general words in paragraphs 3 and 5 must therefore, on familiar principles, be construed as subordinate to the particular provisions contained in the lettered clauses, and not as enlarging their scope: Smith's Estate, 210 Pa. 604, 610.

Without the agreement, the law governed the relations of husband and wife, and within well understood limits, the possible disposition or devolution of the property of either. By their agreement, they prescribed for themselves certain changes in the law governing their marital status different from what the law prescribed. But there is no agreement that, on the death of either, the devolution of property prescribed by the intestate law shall not take place. So radical a change in the legal rights of the parties must be stated expressly, or at least appear by inevitable implication: Talbot v. Calvert, 24 Pa. 327; Rice v. Rice, 2 W. N. C. 672; Scott's Estate (2), 147 Pa. 102; Kaiser's Estate, 199 Pa. 269; Marks' Estate, 297 Pa. 290.

Appellants present another contention. They contend, that by her conduct, the wife "repudiated" the separation agreement during decedent's lifetime, and thereby brought herself within section 6 of the Intestate Act of June 7, 1917, P. L. 429, 435, providing

that a deserting wife may not claim part of her husband's property under that act. It must, of course, be conceded that if the parties set aside the agreement, and restored their marital status (Singer's Estate, 233 Pa. 55), her subsequent, wilful and malicious desertion will bar her right now to claim under the intestate law. The particular act of "repudiation," said to exclude her, is the bringing of a divorce suit. On July 7, 1926, she brought an action of divorce, charging her husband with desertion on June 27, 1926, the date of the separation pursuant to the agreement. That suit was duly heard, and the libel was dismissed on the ground that there was no desertion but only separation by consent. Appellants contend that by charging desertion in that suit, the wife "repudiated" her consent to their living apart, and having so "repudiated" her consent, she became a deserter by continuing to live apart from him, and thus wilfully and maliciously deserted him within the meaning of those words in the statute. But he never agreed to set aside the contract, and she never proposed to return to him as his wife. It is true that a party to such contract may so conduct himself (for example, by committing adultery, Lodge's Estate, 287 Pa. 184) as to furnish ground to the other for a divorce, notwithstanding a separation agreement; and such conduct may show "despite the amicable or reasonable character of the separation, that the adulterer intended to renounce the marriage relations," whereby "the separation would become malicious desertion within the meaning of the Act of 1917": Lodge's Estate, supra. The learned court below calls attention to the fact that, in the divorce suit the husband remained silent, though served with process, strongly indicating that the divorce action was collusive. In any event, her bringing the suit on the charge stated, without more, cannot be regarded as cancelling the agreement

and converting the consentable separation into that wilful and malicious desertion described by the act as disqualifying a widow from taking under the intestate law.

The order appealed from is affirmed at the costs of appellants.