## Coane's Estate

The facts appear from the adjudication of

GEST, J., Auditing Judge.—Robert Coane died on March 17, 1930, leaving to survive him his wife, Marian, or Marion, S. B. Coane, and leaving a will and codicil, which were admitted to probate on March 24, 1930, when letters testamentary were granted.

Proof of advertisement of notice thereof was produced to the auditing judge.

By his will the testator bequeathed $10,000 to be paid immediately after his decease to his wife, Marion S. B. Coane, and directed his executors to maintain and pay the rental for his apartment in the Wellington from the funds of his estate until the expiration of the current lease thereon, so that his wife might occupy the same without expense. By the fifth paragraph of his will he bequeathed specifically certain articles of jewelry and personal effects, and the balance of his jewelry and household goods, furniture, etc., in his apartment in the Wellington and elsewhere, together with his automobile or automobiles, he bequeathed to his wife, Marion S. B. Coane. He bequeathed $1500 to Nellie Daly, his housekeeper, and $500 to J. Walter Short, and by the eighth paragraph of his will he directed that all the foregoing gifts and bequests should be paid free and clear of all succession inheritance or estate taxes, which he directed to be paid out of the principal of his residuary estate; and this he devised and bequeathed to The Pennsylvania Company for Insurances on Lives and Granting Annuities and his wife, Marion S. B. Coane, in trust out of the income therefrom to pay $15,000 a year in monthly instalments to his wife, beginning immediately upon his death, "in accordance with the terms of the ante-nuptial agreement entered into between my wife and myself, dated May 23, 1928," and to pay one-half of the balance of the income to his said wife, Marion S. B. Coane, for life, and to pay the remainder of the income, and the whole thereof upon the death of his wife, to and among his descendants living at each time of quarterly distribution, per stirpes, until the arrival at the age of twenty-one years of the youngest of his grandchildren living at the time of the testator's death, at which time, subject to the interest of his wife, if living, the principal of his residuary estate shall then be distributed to and among his descendants then living, share and share alike, per stirpes, upon the principle of representation, and he provided further that during the minority of any distributee any income payable to him or her shall be held by his trustee

and applied in and about his or her maintenance, education and support, without the intervention of a guardian, and in the event of the death of all his descendants before the youngest of his grandchildren living at the time of his death shall have attained the age of twenty-one years, then, subject to the interest of his wife, he directed that his residuary estate should be divided, share and share alike, among the Northern Home for Friendless Children, The Children's Seashore House, Atlantic City, the Presbyterian Home for Aged Couples and Aged Men and the Zoölogical Society of Philadelphia.

The will was dated October 31, 1928, and the codicil changing the appointment of his executors, and in all other respects ratifying and republishing his will, was dated July 2, 1929.

It appears from the records of this court that an appeal was taken from the decree of probate of the will by Charles E. Coane, a son of testator, which appeal, however, having been called for hearing, was withdrawn.

The testator, being a widower with three children, all of age, Robert Coane, Jr., Charles Ellwood Coane and Elizabeth Coane Stellwagen Gould, entered into an agreement with Marian S. B. Coane, dated May 23, 1928, executed and acknowledged by both of them, a copy of which is annexed hereto, which recited the intention of the parties to marry, and their desire to make a fair and reasonable provision for the said Marion S. B. Coane in lieu of the rights which, after consummation of said marriage, she might or could have as wife or widow, or otherwise, in the property, real and personal, of the said Robert Coane. And the said Robert Coane agreed with the said Marian S. B. Coane that the respective property of each should be held free from any claim or right of dower or curtesy, inchoate or otherwise, on the part of the other, and the said Robert Coane covenanted and agreed to pay to the said Marian S. B. Coane the sum of $15,000 a year in equal monthly instalments for the term of her natural life, said payments to be made by the said Robert Coane or his personal representatives after his death, if he should predecease the said Marian S. B. Coane, and it was expressly understood that said payments were in place and stead of all rights, which, as widow, the said Marian S. B. Coane might have in and to any and all of the property of the said Robert Coane, either as dower and/or as surviving spouse. Annexed to said agreement is the following paper of even date therewith: "I, Marian S. B. Coane, hereby certify that prior to the execution this date of the Ante-Nuptial Agreement between myself and Robert Coane, I was fully acquainted with the property, assets and liabilities of the said Robert Coane and was well aware at the execution thereof that the said Robert Coane, in addition to a life interest in his father's estate, was possessed outright of property having a value of at least $570,000."

The testator and the said Marion S. B. Coane were married on May 24, 1928, the day after the execution of the above agreement, and during his lifetime the testator paid regularly $1250 a month to his wife. After his death the executors continued the payments up to and including February 15, 1930.

By writing executed April 15, 1930, and duly recorded on the same day and filed in this court on April 24, 1930, Marian S. B. Coane, surviving widow, elected in the usual form to take under the will. Subsequently, on February 27, 1931, Marian S. B. Coane executed what is styled an "amended election to take under the will," which was recorded on March 2, 1931, and filed in this court on March 11, 1931, in the following words:

"Know all men by these presents, that I, Marian S. B. Coane, Widow of Robert Coane, Deceased, without prejudice to my rights, interest, estate and privileges to and in a certain ante-nuptial agreement, entered into between me and the Decedent in his lifetime, dated May 23rd, 1928, and, reserving unto

myself all rights, privileges, interest and estate vested in me by said antenuptial agreement, hereby elect to take under and by the terms of the last will and Testament of the above Decedent, dated October 31st, 1928, and Codicil thereto dated July 2nd, 1929, duly probated by the Register of Wills of the County of Philadelphia."

She also claimed her exemption of $500 and the same is credited in the account.

The failure of the executors to continue the monthly payments of $1250 to Mrs. Coane since February 15, 1930, was due to the fact that the assets of the estate had greatly depreciated in value since the death of the testator, and the income had decreased to such an extent that the income of the residuary estate was no longer sufficient to pay the moneys due under the antenuptial agreement. The executors claimed that under the will these payments were intended by the testator to be paid each year from the income of that year alone, that the payments are not cumulative, and that no part thereof is payable from the corpus of the estate. On the other hand, it was contended by counsel for Mrs. Coane that under the provision of the antenuptial agreement the sum of $15,000 in monthly instalments is payable not merely from income but, if that is not sufficient, from the corpus of the estate.

I shall first consider the rights of Marian (or Marion) S. B. Coane under the antenuptial agreement and to what extent, if any, they are affected by the will, and shall then consider the effect of the two elections made by the said Marian S. B. Coane.

1. The provisions of the contract are unmistakably clear. Robert Coane, in consideration of his intended wife's divesting herself of her rights as his surviving spouse, covenanted to pay her $15,000 a year in equal monthly instalments during her natural life, and in case of his prior decease that the said sum should be paid to his wife during her life by his personal representatives. There is nothing in the contract to restrict her rights to his income or the income of his estate.

The marriage was consummated thereafter, and the relinquishment by the wife of her rights as surviving spouse constituted a valid consideration of the highest value: Broadrick v. Broadrick, 25 Pa. Superior Ct. 225. Under the contract Marian became a creditor of her husband, and after his death she continued as a creditor of his estate, a fact which must be kept in mind throughout the whole case. Jones's Appeal, 62 Pa. 324, is an extreme example of the application of this principle of law.

This being so, it seems equally clear that Robert Coane could not by his will diminish the rights of his wife in his estate. But although she was his creditor, there is no reason whatever why he should not also make her a legatee, which, in fact, he did. He bequeathed to her $10,000 in cash and his personal effects not otherwise specifically bequeathed and directed that his wife might occupy his apartment until the expiration of his lease.

These bequests are not made conditionally upon his wife's surrender of any rights she might have as creditor and have no connection with the antenuptial agreement. There is no provision in the antenuptial agreement inconsistent with the testator's right to confer additional benefits upon his wife by his will and her right to accept them. Nor, in my opinion, does the provision in paragraph nine affect the rights of the widow. True, the testator directs his trustees to pay to his wife "out of the income" of his residuary estate $15,000 per year, but he adds, "in accordance with the terms of the antenuptial agreement entered into between my wife and myself, dated May 23, 1928." This is not a disaffirmance of the contract or in derogation of its terms. Quite the contrary; it is expressly said to be in accordance with its terms, and was intended to

enlarge the rights of his wife, and not to diminish them, for after $15,000 has been paid from income he gives her one-half of any surplus income.

In my opinion, the testator intended by this disputed provision in his will to direct his executors and trustees to pay the $15,000 per annum to his wife out of income primarily, but he certainly did not intend to restrict her rights as a creditor for he expressly confirms her rights under the antenuptial agreement.

The testator is shown to have been·mistaken as to the size and productiveness of his estate. That is unfortunate, but cannot affect the widow's rights.

The decision of the Supreme Court in Bowman v. Knorr, 206 Pa. 270, cited by Mr. Scott in his excellent paper book, seems to me to be persuasive in regard to the interpretation of the will. In that case, the syllabus reads:

"A wife who under an antenuptial agreement is entitled to one-third of the income of her husband's real and personal estate for life, 'and in addition thereto so much of the principal as in her judgment shall be necessary for her comfortable maintenance,' is entitled to the custody of the whole estate, or of the proceeds of any sale thereof, although she takes out letters testamentary as sole executrix under a subsequent will of her husband by which her enjoyment of the one-third income is reduced from life to widowhood, the will, however, stating 'this will so far as my wife is concerned is according to antenuptial agreement hereto attached.' "

Considering, therefore, the terms of the contract and the will, I am of opinion that the $15,000 must be paid, if the income is not sufficient, from the corpus of the estate.

2. I shall now consider the effect of the two elections filed by the widow. The right of election given by our law to the surviving spouse of a testator or testatrix is a choice of one of two things, either to accept the provisions of the will or to take, notwithstanding its provisions, "such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate:" Wills Act of June 7, 1917, P. L. 403, Sec. 23.

The right of election given to the widow is a right to elect to take what the will gives her, or against it, what the intestate law would give her. It cannot be said in this case that she was bound to take what the will gave her or what her antenuptial agreement gave her.

The first election by the widow was in the ordinary phraseology, "to take under and by the terms of the last will and testament" of her husband, and, as I have shown above, the will did not detract from her rights as creditor under the antenuptial contract, but affirmed them and gave her, or was intended to give her, something additional.

The widow, however, filed another paper styled "Widow's Amended Election to Take Under Will," which is quoted above. I do not know of any decision which authorizes such an election as this. The surviving spouse must either elect to take under the will or against it, or, if she allows a year to elapse after the grant of letters testamentary, she will, in the words of the statute, be deemed to have elected to take under the will. And in the present case she could not under her antenuptial agreement elect to take against it. Marks's Estate, 297 Pa. 290. To be sure, if the election were obtained by fraud or misrepresentation or without knowledge of the facts on which her election was predicated, she may withdraw it, but a widow, under the law as it now stands, must be held to her election once made: Baily's Estate, 285 Pa. 408, and McCutcheon's Estate, 283 Pa. 157. Under the old informal law a widow could change her mind as often as she pleased before adjudication (for *varium et mutabile semper est femina*): Barry's Estate, 13 Phila. 310; but our statutes have changed that: Act of April 21, 1911, P. L. 79, and section twenty-three

of the Wills Act of 1917. In Mann v. Mann, 75 Pa. Superior Ct. 16, cited by counsel, Judge Linn carefully pointed out that the case arose before the Wills Act of 1917.

But, aside from this, there is no statute or decision which authorizes an election with a qualification or reservation: Powell's Estate, 225 Pa. 518. The peculiar election in McNulty's Estate, 29 Dist. R. 709, was stated in the election itself not to be necessary. That election was nothing more than waste paper, and so is this amended election. In short, if the widow had done nothing, she would be in exactly the same position that she now occupies. I shall, therefore, simply advert for a moment to the contention of her learned counsel that the widow did not know of any divergence in language between the will and her antenuptial agreement until the executors discontinued the payments to her. I do not see how she can be allowed to claim this. She must have known what was in the will, for she was herself one of the executors and acted in its probate. Nor can she rely on any alleged misinformation concerning the size of the estate in relation to the error made in appraising the Building Products stock, by which error the appraised value of the estate is diminished by $71,000. This mistake, discovered, it seems, after the first election was filed, might in ordinary cases allow the widow to retract her election to take under the will and to file another election to take against it, but this widow does not claim a right to take against the will. She had no such right.

The learned counsel for two of the testator's children cites Jarman on Wills (7th ed.), page 510, "that he who accepts a benefit under a will must adopt the whole contents of the instrument conforming to all its provisions and renouncing every right inconsistent with it," but the illustration given by Jarman shows clearly the intent and extent of this principle of equity. He says, "if, therefore, a testator has affected to dispose of property which is not his own and has given a benefit (to him) to whom the estate belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition." But this well known rule has no application to the present case. The legatee in the illustration given would occupy an inconsistent position, but here there is no inconsistency between Marian Coane claiming as creditor and Marian Coane claiming as legatee. Her acceptance of the legacy of $10,000 has nothing whatever to do with her right under the antenuptial contract to receive $15,000 a year.

I conclude that the surviving widow is entitled to receive from the residuary estate $15,000 per annum from both the income and the corpus thereof.

*Harvey Geiger*, for exceptants; *Ernest Scott*, contra.

LAMORELLE, P. J., April 29, 1932.—Were it not that a difference of opinion exists among the six judges who heard the exceptions on reargument, we might well dismiss all exceptions on the logical and comprehensive opinion of the learned auditing judge as contained in his adjudication, and this apart from all citations of authority. To me, personally, the exceptions are wholly without merit and would seem to be based upon a confusion of thought in confounding the technical election of a legatee with that election conferred upon a widow by our statutes, as to which see 1 Pomeroy on Equity Jurisprudence 879 (4th ed.). In the instant case, the widow possessed no right of election whatever. In the circumstances, it may be well to emphasize certain aspects of the case, not to impair the thorough consideration given by the auditing judge, but to stress certain features developed at the argument.

Prior to his marriage, Robert Coane entered into an agreement with his present widow (the one he was about to marry), whereby each party to the agreement surrendered and gave up any and all right either might have in the

estate of the other, and the husband to be covenanted and agreed to pay unto the other the sum of $15,000 yearly in equal monthly payments for and during the time of her natural life, and in case he died first such yearly sum was to be paid by his personal representatives. This agreement was to be void in event that no marriage took place. The marriage was duly consummated, and during the lifetime of the husband such payments were made and continued to be made by the executors of his will after his death until the income proved insufficient for such purpose. But what had income to do with the matter? The claimant having performed her part of the contract, Robert Coane in his lifetime, and thereafter the executors or trustees under his will, were legally bound to pay the monthly sums, irrespective of the value of the estate, or of any provisions of the will which might seek to alter the contract under seal, dated May 23, 1928. The widow was a creditor; those objecting to the payment are volunteers.

That testator by his will made outright gifts to his wife is really beside the real question. Testator might bequeath and devise unto her his whole estate had he so desired. No exceptions have been filed to the ruling that the widow is entitled to her legacies (not because of any election, but because the will gives them), so this matter is not really before us. It is now referred to simply to show that while testator might add to his bounty, he could not detract therefrom, and it is possible that an election was filed because of these legacies. Exceptions, however, seem to treat the election not as an election at all but as an estoppel; which it is not. Even though there were no reference to the antenuptial contract in the will, the widow could have enforced it. But, as before stated, she was not the kind of widow who was bound to elect. See Marks's Estate, 297 Pa. 290; Fridenberg's Estate, 8 D. & C. 705. She had no right of choice. The contract bound both her and the estate of her deceased husband, and our act applies, and only applies, to a widow who has not given up her rights under the intestate law and who is in a legal position to accept the provisions of the will, or to take what the law casts upon her by virtue of the marital relation; and when we say that Mrs. Coane did not occupy such position, it necessarily follows that her election is a matter of no moment in determining the question raised by exceptants.

Accordingly, all exceptions are dismissed and the adjudication is confirmed absolutely.

STEARNE, J., dissenting.—Three of our judges are unable to concur in the judgment of the court. Where a testator by his will modifies the terms of an antenuptial agreement and his widow elects to take under the will, we would rule that she has thereby assented to such modification. Under such circumstances we would decline to permit the widow to accept some of the provisions of the will when to her benefit but reject others when subsequently they operate to her detriment. In our opinion, she must either reject the will in its entirety or remain loyal to all of its directions.

This testator, in his will, recognized his liability under his antenuptial agreement, but directed that the payments thereunder be made *out of his income*. He also gave his wife half the balance of said income, a large cash legacy and other valuable bequests and benefits. The widow elected to take under the will and has accepted and still retains every legacy and right so given her. Due to shrinkage in value and productivity of securities at present, the income from the estate does not equal the full amount of the antenuptial payments. Irrespective of the widow's overt acts in electing to take under the terms of the will and her acceptance of all other benefits, she now claims that she is a creditor, unaffected by the provisions in the will concerning her claim

against the estate. She maintains whenever the income proves insufficient to satisfy the annual antenuptial payments (as it presently is) that such deficit is payable out of principal—even to its exhaustion. This was so ruled by the auditing judge and we deem it error.

The facts are undisputed and are substantially as follows: Testator, an elderly widower, with three adult children, about to remarry, entered into an antenuptial agreement with his intended wife, which provided, inter alia, that he would pay her $15,000 per annum for the term of her life and that such provision should be in lieu of her dower rights in his estate. The marriage was subsequently consummated. Testator died within two years thereafter. Five months after the execution of the antenuptial agreement testator made his will, which was, with a codicil, probated after his death. By the terms of the will testator bequeathed to his wife (1) $10,000 in cash, (2) use and occupancy of his apartment, free of expenses, until termination of lease, (3) all household effects, jewelry, automobiles (except some articles specifically bequeathed). The residue of his estate he directed should be placed *in trust*, and *"out of the income* therefrom, to pay over unto my wife the sum of Fifteen Thousand Dollars ($15,000) per year, in equal monthly installments, beginning immediately upon my death, *in accordance with the terms of the ante-nuptial agreement entered into between my wife and myself dated May 23, 1928."* (The italics are ours.)

Testator then bequeathed one-half of the balance of the net income to his wife. The remainder of the net income and the principal of his estate, upon the death of the widow, he passed to his children and their issue. Upon his death, according to the inventory filed within a few weeks thereafter, the personal estate (exclusive of real estate valued in the petition for letters at $5000) was appraised at $602,557.53. It is to be observed that the income from this fund, even at four per cent., was ample to carry out testator's directions to pay the widow *"out of income"* $15,000 per year and to give her in addition several thousand dollars a year. With this situation before the widow, and within a month after the death, she elected to take under the will. The widow accepted the $10,000 cash legacy, used and still uses, at the estate's expense, the apartment, and has taken the jewelry, household goods and automobiles in distribution.

Between the time of the filing of the inventory and account the shrinkage in value and income occurred. At present the net income does not equal the payments provided for in the agreement. When such situation became apparent, irrespective of her election to take under the will and regardless of her acceptance and retention of every other legacy and benefit given her by the will, the widow claimed and was allowed the entire net income, and, in addition, *out of principal,* the amount of the deficit. This we deem error.

Beyond question, the widow was a creditor of her husband. There was nothing which the husband could have done in his lifetime or by his will after his death, *without her assent,* which could modify or change the written agreement. But testator, by his will, *did* modify the terms of his contract. His widow, in writing, *did assent* to the change, both by her written election and by her acceptance of every other term of the will.

When the testator directed *by will* that the payments to which he was legally committed should be made *out of income,* its effect was an attempted modification of the agreement. Unless the widow, the other party to the inter vivos agreement, consented, such an attempt to modify would be ineffective. But, by writing, she *did* accept the terms of the will and received all other legacies. This, as we view it, was as an effective modification as if concluded inter vivos.

Parties to an unperformed contract may, by mutual consent, modify it by altering, excising or adding provisions: 13 C. J. 589. But one party to a contract cannot alter its terms without the assent of the other; the minds of the parties must meet as to the proposed modification: 13 C. J. 591. And a written contract may be modified or discharged by a subsequent *oral* agreement: 13 C. J. 593; Kime *v.* Ice Co., 240 Pa. 61. No particular form is required to modify a contract; the question of modification depends primarily upon the intent of the parties, and in some cases may even be *inferred* from their acts: 13 C. J. 590.

There would seem to be no fundamental difference between a modification of the contract *inter vivos* and a modification *by will* of one of the parties, *assented to* by the other party to the contract. We view the recorded election to take under a will (and actually accepting all benefits thereunder) as an effectual assent to the modifying terms as if the parties themselves, in their lifetime, had executed a written agreement to that effect.

To be sure, a debtor may, by will, make a testamentary gift to his creditor. Where the amount of the legacy is equal to or greater than the debt, it is *presumed* to be in satisfaction, but this presumption may be overcome by the facts and circumstances: 40 Cyc. 1885 et seq. It is not disputed, under the facts in this case, that had the will remained silent as to the method of satisfaction of the debt the widow would have been entitled to both the annuity and the legacies.

What this testator really did was to reaffirm his obligation under the agreement, but to direct how and from what source it should be liquidated. His obligation and debt unquestionably was paramount to the rights of his beneficiaries. His will was, therefore, attempting to dispose of something in his own estate but which was already vested in law in his wife. She had a valid claim against his estate which decedent, except in payment or consent of his wife, could not affect. Yet the decedent did assay to change and alter this right, but in the same instrument gave his wife substantial benefits.

*As we understand the law, where a widow has or asserts a claim to property disposed of by the will, adverse to testator, she must, like any other claimant, elect whether she will take under or against the will:* 40 Cyc. 1964 and 1957 et seq.; Zimmerman *v.* Lebo, 151 Pa. 345; Cox *v.* Rogers, 77 Pa. 160.

Exactly the reverse of the above proposition is illustrated in the case of Watterson's Appeal, 95 Pa. 312. There decedent insured himself for $10,000, naming his wife as sole beneficiary. Subsequently, decedent made his will and stated that, with his wife's consent, the proceeds from this insurance policy should form part of his estate and made certain dispositions of it. He stipulated, however, that in case his wife refused to consent, then he would make no provisions for her and that the wife should keep the $10,000. The wife declined to turn the $10,000 into the estate, and elected to take against the will. It was contended that the widow could not take her dower rights because she had kept the insurance moneys. It was very properly held that she was entitled to her dower rights because the $10,000 referred to never formed part of her husband's estate. The widow asserted no claim adverse to the husband and neither did she take anything under his will.

Apparently, the case upon which counsel for the widow chiefly relies is Bowman *v.* Knorr, 206 Pa. 270. From the mere reading of the printed report it would seem to be almost parallel. However, our examination of the paper books and record reveal facts which, considered with the opinion, convinces us that it has no application. There the antenuptial agreement provided for *income for life*. The will gave the income to the widow for *widowhood only*. As

the widow elected to take under the will by qualifying as executrix and enjoying the estate for some years, it was claimed that she took for widowhood only. But the distinction is here: in the Bowman case the will stated that its provisions were in accordance with the contract *hereto attached*. It was in fact attached, formed part of the will, and was *probated as part of it*. Mr. Justice Fell sought the testamentary intention. He recognized the difference in the two writings, which he said might have been an accident or oversight. However, he stated that the testator had construed his own will, inasmuch as he declared in his will that *"both instruments were in accordance with each other."* In the circumstances of that case, *as a question of construction*, the Supreme Court decided that what testator intended to give the widow was exactly what the agreement gave her, evidenced by his declaration and by constituting it a part of his will—and probated as such.

Contradistinguished from the Bowman case, this testator *did*, by his will, modify the contract. Neither is there the slightest question of construction. True, testator recognized his liability under his contract, but stipulated that it should be paid *out of income*, and in addition gave his wife substantial legacies. As we view it, when the widow elected to take under the will and accepted and retained all its advantages, she must be held to have assented to testator's modifications of the contract and should be bound by her election.

Whether the election of the widow is statutory or equitable would seem to be wholly immaterial. Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he received one that he should not enjoy both. The doctrine, which is purely equitable and was originally derived from the civil law, finds its most frequent illustration in cases of wills, the principle being that one shall not take any beneficial interest under a will and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will: 40 Cyc., Sec. 1959.

We do not consider that the execution of the antenuptial agreement barred the widow from electing to take under or against the will. In fact, she *did elect* to take *under* the will. True it is that the widow may have bargained away her rights to a spouse's share under the intestate law and the Wills Act. Yet situations readily suggest themselves where a will may prove detrimental to such a widow. In our opinion, under such circumstances, she may still elect to take against the will and receive her share under the intestate law, *except* in so far as she may have legally modified or affected such share by her contract. However, when a widow does in fact elect to take under the will, she ought not to be permitted to take under and against it at the same time.

While the rights and interests of a decedent's widow are entitled to first consideration, yet hers are not the *only* interests to be considered. Testator's children certainly should be protected. They, too, are chief beneficiaries. It is for them and their issue that decedent is preserving, by his will, the principal of his estate. It seems manifestly unfair to permit this widow to elect, at the expense of the children, to take under the terms of the will when obviously to her great advantage (and in fact to take and retain everything that is given to her by the will), and still at the expense of the children (and not her own children), to subsequently reject a single provision in the will which ultimately and perhaps temporarily works to her detriment. This does not appeal to us as either good sportsmanship or sound law. She should reject the will in its entirety or be bound by all its terms. We would sustain the exceptions.

HENDERSON and SINKLER, JJ., join in this dissent.